Overton, J.
 

 delivered the following opinion of the court.
 

 This was an action of covenant, The declaration states that the plaintiff had fraudulently obtained possession of the obligation, so that
 
 profert
 
 cannot be made; to which there was a demurrer, assigning for causes, first, want of
 
 profert.
 
 Second, an action at law cannot be maintained. The circuit court overruled the demurrer and awarded a writ of inquiry, which was executed at the subsequent term; verdict and judgment for $150.
 

 It is admitted in argument, that it has never been decided in this state, that an action at law can be supported on a lost bond, and therefore the question is now open for decision.
 

 On the part of the plaintiff, it is insisted, that it cannot be maintained, there being no precedent of such a case, previously, to the case of Read vs. Brookman in 3
 
 T. R.
 
 151, for which the following authorities have been relied upon Co. La. 35 b 255 5 Co. 74, 10 Co. 92, 2 Str. 1186. and the MSS. case of Helm vs. Eastland in the court of appeals in Kentuky. The court of chancery, it is said, has uniformly considered the subject in this light.
 
 (a)
 
 This argument has been per by showing many cases, where actions have been sustained of lost bonds, since that of Read vs. Brookman, as
 
 1
 
 H. B. 255 1 Wash. 241.
 

 In
 
 the English books, a great variety of cases exist on the
 
 *309
 
 subject of
 
 profert.
 
 The general rule is to be found in Weymark’s, Leyfield’s, and Bellamy’s cases in Coke’s Reports.
 

 It will be found to be, that in all actions, a man who claims by deed and pleads it, if he be a party to the deed, he must make
 
 profert,
 
 and where the deed is not the foundation of the claim may either plead it, or not.
 

 The law, however, requires profert, in all cases, where the claim cannot arise except by deed, as in things which lie entirely in grant. Nearly all the cases in the books are founded in this idea. Upon examining the cases to be found
 
 in
 
 Viner’s Abridgment tit. Faits, & Com. Dig. tit Pleader O. &c. no precedent is perceived, where a plaintiff has bottomed his claim on a deed, and
 
 profert
 
 has been dispensed with. There are many cases, where, on the part of the defence, and in replying, it has been dispensed with, on the ground of fraud or necessity. For a more perfect view of these exceptions to the general rule of law, as well as a knowledge of their origin, we refer to Viner’s Abridgment tit. Faits, Ma, and P. 66, Ma. 671, Ma. 7, Ma. 8, Ma. 9, Ma. 10. Ma. 11, from P. 73 to 78 and Com. Dig. tit. Pleader O. 8 &c.
 

 Sir Edward Coke, who must be admitted to have possessed as strong a wish to extend the powers of a court of law, in derogation of chancery powers, as any Judge, has specified but three cases in which
 
 profert
 
 may be dispensed with. In case of some great public calamity, as fire
 
 ;
 
 the fraud of the other party, as where he has the deed and will not produce it, or has caused its destruction ; and where the deed is in another court.
 

 The great and important principles of the court of chancery, so necessary to the preservation of law in a free country, were unknown in the time of Coke. The exercise of its nesessary powers met with his decided and strenuous opposition, And it will always be kept in mind that the jurisdiction of chancery, was then in its infancy. Its superiority to courts of law, in adopting its modes of redress in civil cases, to the varied actions of men, was then unknown ; nor in fact had any efforts been made to ascertain the limits of its jurisdiction, narrow as it was. We have not a vestige of a decision in chancery previous to the time of Charles 2d.
 

 It was the court of common law that anciently did all the business, and it was in advancement of the jurisdiction and improvement of those courts, that we find the sturdy and capacious mind of Coke employed. Most of his reported cases, and references to other reports respected cases decided at law.
 

 
 *310
 
 In his time, and particularly with his disposition, if a man could not obtain remedy at law, he must generally go without it.
 

 Though there was not wanting a disposition to make the modes of redress at common law, adequate to the exigencies of society ; yet so confined were those courts in their method of preceding, as to be incapable of administering substantial justice in many cases ; this generated a disposition in the nation, to enlarge the chancery powers, to administer justice where the modes of redress at law were incompetent to afford it. As commerce extended, and civilization progressed, the necessity and convenience of the exercise of chancery powers encreased ; until we see at this day, a court of equity, exercising undisputed jurisdiction, not only as an auxiliary in the cause of justice, agreeably to its original character ; but exercising concurrent jurisdiction with courts of law, in relation to many of its important branches, when the modes of legal redress have been found to be embarrassed, doubtful, or inadequate.
 

 It was when mankind knew of a court of law only, as a place of administering justice, that those courts dispensed with profert, but there might be a defect of justice. For the wisest purposes, it was always conceived a matter of substance, and after the establishment of the general principle, it was with evident reluctance, that courts of common law admitted of any exception, as may be seen from Dr. Leyfield’s case, and the summary of cases in Viner’s Abridgment, nearly all of which, were antecedent to, and cotemporary with the period of Sir Edward Coke’s reports. It was only in eases of some public or notorious calamity, as fire, rebellion, or thieves ; and the fraud or obstinacy of the opposite party in detaining or destroying the deed, that the law dispensed with
 
 profert.
 

 (b)
 

 Had there been a court of chancery at that time in the exercise of powers, such as we now see, unattended by the aversion against it, manifested by Lord Coke, no such exceptions as these could have arisen. As the parties would have a more safe, convenient, and less embarrassed mode of redress in equity, we never should have heard of the necessity of the case, as giving rise to exceptions to the general principle. The fewer exceptions to general rules, the less embarrassed the law is. In the nature of things, we rarely expect to see a rule without an exception ; but where it can be attained, it is far better for the happiness of mankind. As exceptions multiply, law becomes more doubtful and obscure.
 

 
 *311
 
 Simplicity in legal science, is what distinguishes its superiority in all ages and countries. it is with this view, the subject will be more particularly examined ; to see if consistent with acknowledged principles, the proper rule in this country be not found clothed with this simplicity of character. Notwithstanding these exceptions are laid down by Coke, we find no instance of
 
 profert
 
 being dispensed with, in the manner contended for in the principal case; even the case of Real vs. Brookman
 
 (c)
 
 does not comes up to this case. There, it made part of the defence and not the ground of action, as in this case; and there surely is a wide difference in the operation of the new principle, where this dispensing with
 
 profert,
 
 is on the part of the plaintiff, and on the part of the defendant.
 
 (d)
 
 Lord Hardwicke observes in Whichfield vs. Fausset,
 
 (e)
 
 " you may drive the defendant to very disadvantageous issues by this method.” The inconveniences are stated clearly in Leyfield’s case.
 
 (f)
 
 If, in England, inconveniences would arise, from permitting the plaintiff to declare without
 
 profert,
 
 how much harder must the defendant's case be here ; deprived of oyer, he verily believes he never did give such a covenant as that stated in the plaintiffs declaration, yet he knows he executed one which in most parts, agrees with the one referred to. If he deny it, it must be on oath, for the plea of non
 
 est factum,
 
 must here be put in, on oath.
 

 A consciencious man who values his reputation, would be fearful of risking the plea, not knowing how parol proof may make the case, though he knows that he never did make such a covenant. Reverse the case, and send the plaintiff to equity tor redress; there the rules of practice require him to annex an affidavit to his bill, of the loss of the bond stated therein. The defendant denies in his answer,
 
 the onus probandi
 
 lies on the plaintiff. At law, on the plea of
 
 non
 
 est
 
 fuctum,
 
 the
 
 onus probandi,
 
 though on the plaintiff, the defendant is placed under truly disadvantageous circumstances to use the phraseology of Lord Hardwicke.
 

 It is repugnant to all ideas of justice and long acknowledged principles, that this should be the case. In most cases, the loss of bonds is occasioned by the carelessness or negligence of those who have possession of them. Whatever inconvenience thence arises, surely should not be placed on the shoulders of the obligor, against whom no imputation can be made. By allowing a party, plaintiff, who makes a lost bond the ground of his action, to declare without pr
 
 ofert,
 
 the
 
 onus probandi
 
 is almost necessarily thrown on the defendant. The general issue must be on oath, which
 
 *312
 
 the defendant would be afraid to venture, and any special plea must confess and avoid. The case of Read and Brookman, on which the argument of the defendant’s counsel is founded, seems to have originated from an improper application of the doctrine of legal presumptions. One of the exceptions to the general rule, noticed in Weymark’s case
 
 (g)
 
 is the only one which is supported by correct principles, “ where a deed has been pleaded in some other court, where it remains and may be resorted to.” This is admitted because it does not fall within the scope
 
 of
 
 reasoning, opposed to the new principle established in Brookman’s case. In the excepted case, access can be had to the deed in another courts
 
 though
 
 profert be dispensed with.
 

 All the cases in the books, must arise out of interests of some one or other of the following classes.
 

 1st. From deeds, communicating corporeal estates of freehold, and since the statute of frauds and perjuries, those of less dignity.
 

 2nd. Similar incorporeal estates, which lie in grant, agreeably to the principles of the common law.
 

 3rd. Deeds Communicating rights, which lie in action.
 

 4th. Deeds operating as an extinguishment, release, &c. Considering the structure of the common law, cases under the first class could but seldom arise, and estates of inferior dignity might pass by livery, without deed; consequently, though there might be a deed, the party was not bound to plead it.
 
 (h)
 

 So
 
 when, the thing to which the deed relates, has been executed,
 
 (i)
 
 it is from cases arising out of the second and fourth classes we must look tor precedents; principally however, arising out of the second, The reasoning in Brook man’s case, is referrible to two principles, first,
 
 length of time,
 
 creating a presumption of law, and secondly to
 
 accident.
 

 As the main force of the reasoning is derived
 
 from p
 
 resumption, a succinct history of this part of the law, may not be improper. A careful observation of the changes it has under went, may throw some light on the subject. Its principles formed part of the common law. The first impression was, that after forty years of uninterrupted enjoyment of property lying in grant, a deed, or grant would be presumed, though none could be produced.
 
 (j)
 
 Afterwards thirty years were considered sufficient to create a presumption of the former existence of a grant or deed.
 
 (k)
 

 From the earliest accounts we have of the decisions of the courts, on common law principles, presumptions of non-existing grants and deeds, have obtained, as recognized
 
 in
 
 Bid
 
 *313
 
 dle vs. Beard, (1) where the court said “ it would intend in ancient and continued possession, that there respect of the ancient and continued possession, was a lawful grant of the king; for records and letters patent and other writings, are either consumed, or are lost or embezzeled
 
 ;
 
 and God forbid, that ancient grants and acts should be drawn in question, which were at first necessary to the perfection of the things, although they cannot be shown.”— In the various decisions which have taken place since that time, until of late, the courts appear to have avoided laying down any precise rule on the subject.
 

 They adjudged the cases before them, sometimes giving an opinion that fifty, forty, or thirty years were sufficient length of time to create a presumption of a non-existing grant or deed. At length in the case of Darwin vs. Upton,
 
 (m)
 
 twenty years were adjudged sufficient. This was the possession of ancient lights—but in 11 East 284, 491, twenty years were esteemed a sufficient lapse of time to presume a grant from the crown; and in the same book P. 376, six years employment of a highway, created a legal presumption of the grant, from the owner of the soil. By recurring to a regular series of cases from the time of Sir Edward Coke, we perceive a disposition in the courts to narrow the time, after which the presumption should arise, proceeding by analogy to the statutory provisions respecting limitation. Commencing first, by reference to the limitation in droitural actions, agreeably to the 22 H. 8 c.
 
 2
 
 and 21 J. 1, c. 16
 
 ;
 
 and thence by an easy progress, the limitation of possessory actions, agreeably to the latter statute was adopted, as the rule of presumption. Thus accomodating the principles of law to the progressive state mankind. This is the natural course of things, for as men advance in commerce and wealth, their civil rights are multiplied ; the acquisition of property sought after, and pursued with more activity.
 

 Then it is, that prescription and presumption must be resorted to, for the peace, order, and happiness of society
 
 ;
 
 and hence we perceive the gradual extension of these principles. In relation to statutory regulations, coming nearer to our own time, we find this legal presumption, on which limitation is founded, narrows the time still more. As against the state where, by the principles of the common law, no time runs, twenty years were prescribed as a proper time for the creation of this presumption, in case of a grant for land
 
 ;
 

 (n)
 
 which is thee strongest instance of a presumption,
 
 (o)
 
 As against an individual seven years gives rise to the presump
 
 *314
 
 tion of a deed for real property, and three years in most cases respecting personal demands.
 
 (p)
 
 This however is to be understood in reference to the latest decisions, from which it appears that presumptions are bottomed on the policy of statutory limitations,
 
 (r)
 
 and not as giving any decisive opinion on the question of its application here. There is a material distinction between relying on a presumption of a grant or deed in evidence under the general issue, and in pleading—in the first, it is a single fact, whether a right once passed by deed; in the latter, the substance, terms, and particulars of the deed, are set out, or ought to be stated, so that the court may judge of its meaning; for the construction of all deeds, is matter of law, for the court to judge of, and not the jury. By dispensing with
 
 profert,
 
 matter of law, which exclusively belongs to the court, must be left to the jury;
 
 (s)
 
 a circumstance which seemed to have escaped the attention of a majority of the judges in Brookman’s case. The doctrine of presuming a non existing grant, after a length of time, upon which nearly all the reasoning of Ashhurst and Buller depends, is admitted by Coke, as well as other writers since his time; at the same time it is laid down, that when it becomes necessary to found a claim on a deed in pleading, pro
 
 fert
 
 cannot be dispensed with, so that the court may judge of it.
 

 The other ground of argument, by the court in that case, is
 
 accident
 
 ; and Cokes opinion in Leyfield’s case respecting necessity from the loss of deeds, or detention by the opposite party, is the foundation of the opinion of the court as to this branch of the subject. The dearth of precedents, on this ground, with the uniform practice to recur to equity for relief, in such cases, down to the time of Brookman’s case, demonstrate the unsoundness of this doctrine. The point was not necessary to be determined in Leyfield’s case, and it is evident that Sir Edward Cokes opinion in this respect arose from the hardship of the case, and a desire that a party should not be without remedy. Taking the whole of the case, and the inconveniences he depicts, from dispensing with
 
 profert,
 
 this is evident. But at this day, by application to a court of equity to establish a lost deed, all these inconveniences are avoided, and the general principle suffered to operate unem. but barrassed with exceptions. In the case of Hardy vs. Stephenson 10 East 55, though the court does not expressly overrule Brookman’s case, the reasoning employed completely overthrows it and establishes the doctrine of Mr. Justice Grese in that case. The substance of the case in 10 East is, "that where, in excuse
 
 of profort,
 
 it was averred that the
 
 *315
 
 deed was destroyed by accident and length of time, and therefore could not be brought into court, and that the date thereof, and the particular parties thereto, were for that reason unknown, this mode of pleading was held to be bad.”—It was the benefits arising from legal presumption which seemed to have principally governed Ashhurst and Buller in Brookman’s case, as well as the apparent inconsistency of allowing matter to be given in evidence to a jury, and not permitting the same matter to be averred in pleading, if necessary. In creating a new principle in Brookman’s case, it ought not to have been forgotten that another was destroy ed, by which a matter that properly belongs to the court was transferred to the jury ; thereby endangering that certainty, in which the law delights, and placing the defendant in embarrassing circumstances, from which he could not extricate himself. Besides, in this way of pleading, a plaintiff who might wish to get an advantage of an obligor, would conceal or destroy the obligation, and alledge in his declaration, that it was lost by time and accident, and such variations in its terms, suitable to himself, as he could find the frail memory of a witness disposed to support. All these difficulties would be avoided by recurrence to a court of equity, to establish, or set up a lost deed.
 

 The ancient doctrine of granting imparlances until the opposite party produced the deed, counterpart, or copy ; or admit such counterpart or copy, does not fall within the scope of this reasoning, and therefore no opinion is given on questions of that kind. It is only to cases where it becomes necessary to found a claim in pleading, on a non-existing deed, or one not in the possession of the party wishing to avail himself of it, that this opinion applies. This leaves the doctrine of legal presumptions, so necessary to the happiness of society, untouched. As in the time of Lord Coke it might be relied on in evidence on the general issue,
 
 &c ;
 
 so it is left by the court in this case.
 

 Upon a full view of the whole ground, it appears, that the opinion of Mr. Justice Grose, in Brookman’s case, is the correct one; and that the doctrine laid down by Hardwicke, in Whitfield vs. Fausett must obtain, " that wherever a plaintiff at law, intends to found an action on a deed, he must make
 
 profert.
 

 (t)
 

 Judgment must therefore be reversed, and judgment for the defendant.
 
 *316
 
 history of our jurisprudence shows, that the latter has ever acted as pilots for courts of law, in the improvement of legal science. Sir John Mitford observes, that " the distinction between strict law and equity, is never in any country, a permanent distinction. It varies according to the state of property, the improvement of arts, the experience of judges, the refinement of a people”—and again, that “law and equity are in continual progression, and the former is constantly gaining ground upon the latter. A great, part of what is now strict, law, was formerly considered as equity ; and the equitable decisions of this age will unavoidably be ranked under the strict law of the next. ” Mitf. 428, 431. In this short outline, we see the boundaries between law and equity. described by the pen of a master in his profession. The precedents result in this, that wherever a party can obtain adequate relief in a court of law, according to its modes of proceeding, he shall not have relief in equity, But where the remedy is difficult, embarrassed, or inadequate, equity Will entertain jurisdiction. 3 Johns. 590, 2 Cains 251, Hughes Rep.
 
 79,
 
 10 Johns. 587,
 

 But it is of great importance, that the jurisdiction of courts of law and Equity, should be kept as distinct as possible, Thus, Sir John Mitford, afterwards, when chancellor of Ireland, observes, in the case of Shannon and Bradstreet, when speaking of the constitution of courts of justice, “ It is a most important part of that constitution, that the jurisdiction of the courts of law and equity, should be kept perfectly distinct; nothing contributes more to the due administration of justice. And though they act in a great degree by the same rules, yet they act. in a different manner, and their modes of affording relief are different. And any body who sees what passes in the courts of justice in Scotland, will, not lament that this distinction prevails. But Lord Mansfield seems to have considered that it manifested liberality of sentiment, to endeavor to give the courts of law the powers, which are vested in courts of equity
 
 ;
 
 that
 
 it
 
 was the duty of a good judge
 
 ampliare juridictionem.
 
 This, I think is rather a narrow view of the subject. It is looking at particular cases, rather than at the general principles of administering justice, observing small inconveniences, and overlooking great ones.” 1 Sch and Lefroy 66.
 

 (a)
 

 2 Atk.61 1 Atk. o 5,1 vez. .45, 3S3,
 

 (b)
 

 10 Rep. Leyfield’s case.
 

 (c)
 

 3 T. R 151,
 

 (d)
 

 13 Vin. Ab 67, plg
 

 (e)
 

 1 Vez. 394
 

 (f)
 

 10 Coke 92
 

 (g)
 

 5 Coke 74.
 

 (h)
 

 13 aers Ab.
 
 76
 

 (i)
 

 lb. 7
 
 4.
 

 (j)
 

 Vin.
 
 ab. tit length of time.
 

 (k)
 

 1 Bay. 364.
 

 (m)
 

 26 G. 3 T. R. 159
 

 (n)
 

 Ird. Rev. 122, 174-8 c 4 s 5, c 15, 21 years.
 

 Tho these acts are not in force here they serve illustrate the argument. They are not in use from accident, and it may
 
 be
 
 necessary for the legislatur hereafter to make a similar regulation.
 

 (o)
 

 3 T. R. 158 per J. Ashurst.
 

 (p)
 

 1715 c 27
 

 (r)
 

 Darwin vs Upton 11 East 284, 491, 376,
 
 2
 
 Vent. 340, 3 3 P. W. 288
 

 (s)
 

 13 Vin, Ab. 66
 

 (t)
 

 The principles which govei
 
 n
 
 the rights of men, art- exactly the same in courts ol law, and courts of equity. The