Ciiabb, J.
delivered the opinion of the court. The defendant in error, brought an action of ejectment for a tract of land which he particularly described in his declaration. The plaintiff in error was permitted to defend in the room and stead of the casual ejector, and pleaded the general issue. The cause was tiled in the circuit court of Knox county, at August term, 1825, and a verdict and judgment rendered in favor of the plaintiff. Hanes appealed to this court.
Upon the trial below, the lessor of the plaintiff produced a grant for part of the land in dispute, dated in 1815. A bill of exceptions not professing to set out all the evidence in the cause, informs us, among other things, that “the defendant háving proved, that he and those under whom he claimed, had for more than thirty years been in the peaceable and uninterrupted possession and enjoyment of the land sued for in this action,” the court was requested to charge the jury, that if they believed the land covered by plaintiff’s title, was not also covered by the grants produced on the part of the defendant, that then, from the length of possession, a grant to Hanes, or those under whom he claimed might be presumed. But the court charged the jury, that if they believed, the grant of the plaintiff covered the land in dispute, and that it was not also covered by the grants under which defendant claimed, and which were produced, read and relied upon by him; and also that he was in possession of any cleared or improved land within the limits of'"the plaintiff’s grant, at the commencement of *231 She action, plaintiif was entitled to recover, and that from length of possession in this state, a grant was not to he pre- • sumcd to have issued.”
The single question argued at the bar is, whether the circuit court expressed a correct opinion to the jury on the doctrine of presumption. .
The species of presumption., of which we are now to spealt, results from the combined operation of possession and lapse of time. Possession of itself, is from the nature of men and things, an indicium of ownership. If all other persons, save the possessor, acquiesce in the possession, the acquiescence tends more strongly to prove property in him; and in proportion to the continuance of the possession on the one hand, and of the acquiescence on the other, do the probabilities increase, that he who is thus permitted to use and enjoy, has a right to use and enjoy; and in the same proportion do the probabilities increase, that any adverse claim which may be set up, is without foundation.
When the uninterrupted enjoyment has been continued .fora long time, the mind is strongly carried by the very statement of the fact, to the conclusion, that the claim of him who possesses, had a just and legal origin; and by the mere statement of the same fact, we are induced to suspect the justice and legality of an adverse claim. “Tempms” too “est edax rerum.” Pie, who half or quarter of a century ago, was abundantly able to exhibit his evidence of ownership, may be unable to do so now. His witnesses are dead, or have removed to distant countries, or have forgotten the facts; his deeds, his writings, his title papers are destroyed, or lost or defaced.
Fromconsiderationssuchas these, has been deduced the rule of law, that long continued uninterrupted possession, shall be left to a jury, as a ground upon which they may presume that deeds, grants, records, writings, facts, &c. which cannot now be produced or proved had formerly a legal existence. It is a rule founded upon, and accordant , with the law of nature. (Vattel’s Law of Nature; &c. book 2,ch. 11, sec. 141.)
It is a rule adopted into the municipal code upon the *232 ground of public policy. Chelmer vs. Bradley, (1 Jac and Walker's Rep. 63;) Ricard vs. Williams, (7 Wheaton’s Rep. 109, and see 5 John. ch. Rep. 545.)
No principle of our jurisprudence was more firmly fixed by English precedents at the time of our revolution.
In Bedle vs. Beard, (12 Rep. 5,) it was resolved, says Lord Coke, “by Lord Ellsmore, with the principal judges, and upon consideration of precedents, that although by any tiling that can now be shown, the impropriation is defective, yet it shall now be intended, in respect to the ancient and continued possession, that there was a lawful grant of the king, to the said Humphrey, who granted in fee, so that he might lawfully grant it to the said priory. Omnia praesumuntur so emniter esseeacia. And all shall be presumed to be done, which might make the ancient impropriation good. For tempus est edace rerum, and records, and letters patent, and other writings, either consume or are lost or embezzled, and God forbid that ancient grants and acts, should be drawn in question, although they cannot be shown, which at first was necessary to the perfection of the thing, &c.”
What was presumed in that case, was a grant of an advowson from the king. The case of Crimes vs. Smith, same book, page 4, is to the same effect.
In an anonymous case, reported in (1 Ycntress 257,) the court said, “they would presume a surrender to support a recovery suffered a long time since, the possession having gone accordingly.”
In the Mayor of Hull vs. Horner, (Cowper’s Rep. 102,) a grant from the crown of certain duties, was presumed, on account of the long continued enjoyment of the right. Many other cases, which might be referred to, decided both before and subsequent to our revolution, show conclusively, that the rule above laid down, was tm established principle of the English law. See Goodtitle on the demise of Bridges vs. Duke of Chandos, (2 Bur. Rep. 1065,) in which, although the determination was against the presumption, on account of the particular circumstances of that case, yet the doctrine is sanctioned by Lord Mansfield and his associates.-
*233 In Goodtille on the demise of Parker vs. Baldwin, Lord Ellenborough said, “the courts were in the daily habit of presuming grants from the crown, as of markets and the like, upon an uninterrupted enjoyment of twenty years. See also Barwick vs. Thompson, (7 Term Rep. 488.)
In other states of the union, and in the supreme court of the United States, numerous adjudications have occurred, which, though not to he regarded as precedents, or binding authorities on this court, serve to confirm and illustrate the doctrine, as received by us, from our English ancestors. (3 John. Cases 118; 3 John. Rep. 269; 4 John. Ch. Reports 1 and 294; 10 John. Rep. 380; 2 Hen. and Mun. 370; 1 Bay’s Rep. 26; 2 Haywood’s Rep.. 26; 5 Cranch’s Rep. 262.) See also the opinion of the supreme court of the United States in the case of Ricard vs. Williams, (ubi supra) in which Mr Justice Story, page 109, says, “there is no difference in the doctrine, whether the grant relate to corporeal or incorporeal hereditaments; a grant of land may he as well presumed, as a grant of a fishery, or of common, or of a way. Presumptions of this kind are adopted from the general infirmity of human nature,- the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possession.”
Without pretending to enumerate all the cases, in which the principle we advance has been adopted, we may venture to affirm, that in no reported case, of high respectability, has its truth been questioned.
When we turn our eyes to the legislative provisions, judicial determinations, civil, political, and social institutions — the habits, feelings, and interests, of our own parti, cnlar community; ever changing in its character and composition, by successive influx and efflux of population, we can discover no circumstances or considerations, by which we can be led to conclusions, different from those at which we have arrived, by a view of the English decisions, and those of our sister states.
-There is as pressing necessity for adherence to the doctrine of presumption here, as there can be in any other government. The same inconveniences — the same injurious *234 consequences will result from uncertainty as to the owner-g^jp 0f rcai estate; peace and repose, are not less desirable-here, than elsewhere, and never-ending litigation as much to I*® deprecated»
The case of Winton vs. Rodgers, (2 Ten. Rep. 185,) was cited by counsel, for the purpose of showing that the doctrine of presumption has been repudiated by the courts of this state. We are satisfied, that the learned judge, who delivered the opinion of the court in that case, had no such intention. This question did not arise — no length of possession, or other circumstances, appeared in the case, on which to bottom a presumption. See Bridges vs. Duke of Chandas, (ubi supra,) the defendant there was a mere intruder. The general expressions used by the judge, must be interpreted with a view to the facts before him; and we venture to assert, that he was not thinking of the question now presented. It is sufficiently apparent, from other judicial opinions of that gentleman, and the court of which he was a member, that there was an entire coincidence of sentiment between them and ourselves.
Judge Overton delivering the opinion of the court in the case of Gwathney vs. Stump, says, “presumption and prescription must be resorted to, for the peace, order and happiness of society. As against the state, where, by the principles of the common law, no time runs, twenty years were prescribed by the courts, as a proper time for the creation of this presumption in case of a grant for land, which is the strongest instance of a presumption,” &c. (2 Tenn. Rep. 313.)
It is contended, that a potent argument against the applicability of this principle here, arises from the fact, that our title papers are all required to be registered once, and grants from North Carolina twice, first in the secretary’s office, and again in the county where the land lies, thus increasing the prospect of their preservation, to such an extent, as to render a resort to the rule in question unnecessary and inexpedient.
This objection admits of several sufficient answers. Ia the first place, the assertion is not often supported by the. *235 fact, that grants from North Carolina are twice registered. True the acts of assembly contemplate this double registra-lion, but it is well known, that in many instances the legislative provision was not complied with; and courts of justice have never considered a compliance with them neces.sary to the validity of a grant. (1 Tenn. Rep. 376.) Besides if the court's were to sanction the idea, that the registration of deeds, grants, &c. would disenable them to presume, for the protection of ancient possessions, they would at once sap the very foundation of the rule; for, in practice, it has been applied both in England and the American states, to ■deeds required to be registered, grants, and indeed to all sorts of records. Patents are required to be recorded, but the officers may have neglected their duty — they may not have recorded them, or the records may have been defaced •or destroyed. The possibility leaves ground enough for the presumption, in favor of the peace of society, when no bad consequences can result, comparable with the evils that would otherwise ensue.
But again, the necessity for presumption, does not always ■spring from the probability, that the whole grant, deed, -&c. has been lost, &c., which once had a legal existence. It may arise, for instance, from the probability, that a deed, grant, &c. cannot now be shown to cover a piece of land, which it might once have been shown to cover. The land marks are destroyed. Proof cannot now be produced. Take the very case mentioned at the bar; a grant, professing on its face to dispose of £40 acres of land, calls to run the number of poles necessary to include that quantity, but in fact the marked lines extended further to marked corners, and included seven hundred or one thousand acres; all will agree, that the grantee would have a good title for all the land included within those lines and corners. He sold and conveyed the excess beyond the distance called for in his grant, to a third person — that third person, or his sub-purchasers, have remained in possession for twenty or thirty or fortyyears; — they have cleared fields, built houses, or if you please, laid off a town on the land — the trees are Cut down, among them the lines and corners — they cannot *236 be proved — the witnesses are gone — the land may once not have been worth fifty cents per acre; it may now command as many dollars, or as many hundred dollars. Should a grantee of yesterday, cast a wishful eye on the houses, stables, barns, orchards, meadows or town lots of the innocent purchasers, or their still more innocent descendants — what doctrine so convenient, with which to resist the ill-timed claim, and give quiet and confidence to the possessors, as the doctrine of presumption?
The court, in such a case, would say, with the supreme court of New York, “The fact is presumed for the purpose, and from a principle of quieting the possession; and not because the court really think a grant has been made.” M'Donald vs. M'Neal, (10 John. Rep. 380; 12 Vesey’s Rep. 266-7.)
In such a case length of possession supplies the place of testimony; presumption is substituted for belief. We believe when the fact is proved — we presume in the absence of proof.
Another objection deserves notice. It is said that Hanes, by producing and relying upon grants, under which he claimed, repelled the idea of there being other grants; and disentitled himself to ask the court and jury to presume. It is true, that to authorise a court to presume, the nature of the possession, and the facts proved, must not be inconsistent with the desired presumption. But we consider the circumstance of the possessor, producing a grant for contiguous lands, and manifesting by his acts, that he has a long time been impressed with the belief, that it did in fact cover the spot in controversy, instead of weakening the presumption of the existence and loss of the grant actually covering it, as tending to strengthen, or at least as being entirely consistent with such supposition. It may be that the possessor has been lulled into supposed security, by a mistaken confidence, that one grant covered him, until by means of time and accident, that which actually did protect, has been lost or destroyed. Supposing that the grant produced actually covered adjacent land, that very fact renders it probable, that he would wish, and did also appropriate the *237 land in question. Supposing that the grant produced cannot be shown to cover any land, the fact of its existence, and of the possessor having claimed this land under it, is at least consistent with the supposition we are asked to make, namely — that the calls in the grant were once such as to include him, but that they have been altered, or defaced in the lapse of time; or that the claimant hád once another grant which really covered him.
Indulgent to the weakness of our nature, as a matter of ■public policy — to promote the repose of society, and to put down litigation, courts intend the existence of facts, when it is unreasonable to expect evidence of them.
Let the judgment of the circuit court be reversed, and the cause remanded for a new trial.
Judgment reversed.