Henry G. Smith, J.,
delivered the opinion of the Court.
*152 Turbeville brought this action in the Circuit Court of Davidson County, against Anderson, for obstructing his passage along a public street, in the city of Nashville, by reason of which he suffered damage.
The matter in controversy was, whether the land over which Turbeville proposed to pass, and was hindered, is a public street, or private property. Anderson claims the land to be his private property, and Turbe-ville claims that the land is part of what is called, in Nashville, Old McLemore Street, and is a public highway.
In the year 1856, Anderson bought from John H. "Williams, and obtained from him, a deed of conveyance of a lot, a part of which lies within the supposed street. Recently, Anderson erected a fence upon the line described in the deed, and extending into and across a portion of the street, and obstructing the passage of persons along the street.
To establish the existence of the street, the plaintiff put in evidence upon the trial, in the court below, a transcript of the record of proceedings before the judge of the Circuit Court of Davidson County, beginning in 1844, and ending in 1852, wherein a decree was rendered, establishing the street in question.
Evidence also, was given, tending to prove that the street had been used as a public highway for many years before the proceedings in the Circuit Court.
On the other hand, the defendant produced in proof, the transcript of the proceedings in the Chancery Court at Nashville, between the Trustees of the Female Academy, complainants, and the Municipal Corporation of *153 Nashville, defendants, -wherein was rendered, in 1859, a formal decree, ordering the street, as to the part in question here, to be closed and extinguished, and a new street a short distance to the west, and parallel to the old street, to he opened as a public street in the stead of the old street.
Upon the trial of the cause between the present parties, Turbeville and Anderson, the Court below instructed the jury that the order of the Circuit Judge, in 1852, was a valid decree, and established Old McLemore street as a public highway; and that the decree of the Chancery Court, of 1859, was void and of no effect.
Exception was taken to the charge of the Court, by the defendant, Anderson, The jury found a verdict in favor of Turbeville; and the cause is brought here, on' bill of exceptions, by appeal in error.
The errors assigned are:
The instruction, that the decree of 1852, establishing the street, is valid; and the instruction, that the decree in Chancery, of 1859, abolishing the street, is void. On the part of Anderson, the claim is, that the instructions were erroneous, as to both derees. For Turbe-ville, the contrary is assumed.
To the first point: — The record of the proceedings in the Circuit Court, upon the application to establish the street, beginning in 1844 and ending in 1852, is imperfect. The papers in the case are lost. Nothing appears here, but what is of record entered on the minute book of the court. From this it appears that, at May Term, 1844, upon the petition of -the Mayor and Aldermen of Nashville, an order was made, recit *154 ing, that, it appearing that tbe facts stated in tbe petition of tbe Mayor and Aldermen of Nashville, ex-^parte, are true, and that tbe prayer of tbe petition ought to be granted; it is, therefore, ordered, that tbe sheriff summon a jury of twelve impartial freeholders, who shall be sworn, and shall then examine the ground, and ascertain whether the establishment of the street be expedient, and what damages are likely to arise, etc., and shall report, etc. At May Term, 1846, the order directing a jury of view, etc., is rendered, etc. At May Term, 1852, an order is made, reciting, that it appears from the petition that the prayer ought to be granted; and the Court orders that the sheriff summon a jury of twelve impartial freeholders, etc., who shall examine the ground, and report upon the utility and necessity of the street, etc.
Afterwards, and at the same term, a decree is rendered reciting that the cause comes on to be heard upon the report of the jury; which report recites that the jury, composed of twelve freeholders, etc., summoned by the sheriff, etc., and being duly sworn, examined the ground and unanimously agree that the proposed street is of great importance to the public and to the owners of the lots fronting on it, and ought to be opened and established; and that no damages ought to be allowed to the owners of the ground, for the reason that the street will increase the value of the ground more than the amount of the damages, etc. Whereupon the Court orders and decrees that the report of the jury be confirmed, and that the' street be opened and established as a public street, etc.
*155 On tbe part of Anderson, it .is alleged tbat tbe record is void for divers defects and irregularities:—
First, Notice of tbe proceedings to establish tbe street, does not appear to have been given to the owners of tbe land condemned for the street; and especially to tbe Trustees of tbe Eemale Academy, who owned the greater part of tbe land, or to Williams, tbe grantor of Anderson.
Seeond, No damages were assessed to tbe owners, and none are shown to have been, paid to' them.
Tbe proceedings were bad under tbe Act of tbe General Assembly of Nov. 14th, 1827, which enacts: Tbat, whenever tbe Mayor, etc., of Nashville, are of opinion tbat tbe public convenience will ' be promoted by opening a new street, etc., they may prefer their petition, under tbe band of tbe Mayor, to the judge of tbe Circuit Court of Davidson County, in term time, setting forth particularly the ground over which it is designed to run tbe new street. Tbat on such petition being exhibited, tbe Court shall order tbe sheriff to summon twelve discreet and impartial freeholders, citizens and inhabitants of tbe town, who shall, on their oath, administered by a justice of tbe peace, view tbe ground over which it is designed to run tbe street, and ascertain tbe damage any person may sustain, in consequence of tbe street passing over his land, and inquire whether tbe opening of tbe street is important to tbe public convenience; all of which facts tbe jury shall report, etc. Tbat on tbe report made and signed by tbe jurors, or a majority of them, tbe Court shall proceed to consider and give judgment on tbe petition; *156 and if, in his opinion, it will promote the public convenience to grant the prayer of the petition, he shall decree that the street may be opened and established; provided, that the Mayor, etc., shall not proceed to open the street, until they shall first deposit in the office of the Clerk of the Court, or pay to the person or persons, the whole amount of the damages awarded by the jury; and provided, that any person through whose premises the street shall pass, may appeal to the Supreme Court.
First, As to the effect of the decree of 1859, between the Female Academy and the Mayor and Aider-men of Nashville:
The bill between the parties, sets forth the proceedings in the Circuit Court ordering the establishment of the street; and that the Academy was at the time, the owner of a large part of the land on which the street was laid out between Spring and Union streets; and that the proceeding was irregular in many designated particulars; and that no compensation was ever paid to the Academy, and no provision ever made or provided for the payment; and prays that the order establishing the street be decreed void, and that their land be not taken for the public use, without compensation.
The answer denies many, perhaps most of the material allegations of the bill.
The final decree recites: That, it appearing by consent of counsel of the parties, that they have compromised the matter of litigation, by an agreement of the Academy to lay out and dedicate to the public use, a street across their land, about forty feet west of, and *157 parallel to tbe street in controversy; and by an agreement of tbe Mayor and • Aldermen, that tbe Chancery Court shall declare void and annul tbe decree of tbe Circuit Court laying out tbe old street; and that tbe opening of that street shall be enjoined. It was therefore ordered that tbe street dedicated by tbe complainants be established a perpetual public highway, and that the decree of tbe Circuit Court be void and annulled, and tbe defendant perpetually enjoined from opening the street in controversy — tbe Old McLemore Street.
This decree is not void. Tbe bill stands on an established equity of tbe person whose land has been taken for public iise without compensation paid or provided, to enjoin the taking, and have tbe same declared void, unless tbe compensation be paid or provided: 6 Paige, 83; 2 J. C. R., 161; 1 Baldwin’s Rep., -; 2 Swan, 540; 2 Story’s Eq., secs. 527, 528; Cooley Const. Lim., 528, n, 529, n.
Between tbe parties and privies to this decree, it is valid and binding. But no further, nor otherwise.
So far as relates to tbe Mayor and Aldermen, they represent tbe public, and have tbe power to bind the rights of tbe public, in regard to tbe opening and closing tbe streets of tbe city. With respect to tbe closing of a public street, tbe municipal corporation representing tbe State, has tbe power to abandon tbe public use of it, and be exonerated from obligation to keep it in repair, and otherwise suitable for tbe public use: Cool. Const. Lim., 522; 26 Penn., 238; 21 Conn., 313; 4 Humph., 313.
But tbe owners of lots bordering -upon a public *158 street, Rave an easement of way in the street, in addition to the use of it in common with the people generally. This additional right of way, is private property, within the protection of the law, as much as if it were corporeal property, and cannot he taken for public use without compensation. Like any other property, it may be taken for public use, upon compensation: Cool. Const. Lim., 557, 544; 31 Mo., 180; 13 Wend., 355; 23 N. Y., 42; 2 J. C. R., 162; 18 Barb., 284; 35 N. Y., 454; 5 Denio, 255; Sedg. Stat. and Const. Law, 516; Ang. & Durf. on Highways, sec. 304, 243, 91, a.
As to the easement of private way, the municipal corporation does not represent the owners of it. A decree wherein those owners are not parties or privies, is not binding upon them, and does not deprive them of their rights of property. The decree, therefore, between the Female Academy and the Mayor and Aldermen, is without effect as to the owners of lots bordering on the old street, or other persons having an easement of private way in the street, without effect so far as relates to their easement of private way, if any such easement they have.
Though the decree in Chancery so far avoided the decree in the Circuit Court, as to vacate the public right to the use of the street, it does not by any means follow, that the decree in the Circuit Court is absolutely void, as in favor of the owners of bordering lots.
An easement of private way is acquired in many modes — by adverse user for time which raises prescrip *159 tion or tbe bar of limitations by grant of tbe owner of tbe land in wbicb tbe way is, express or by implication; user under a dedication of tbe way to public use in any of tbe modes wbicb establish a dedication to public use; acquisition of the right of way, by tbe modes wbicb operate by estoppel. on the owner of tbe land on wbicb tbe way is, to dispute tbe right of way of tbe owners of bordering lots; and perhaps in other modes that may be suggested: 9 Yer., 390; 2 Tenn., 313; 11 East, 375, n.
Upon the question whether an easement of private way bad been acquired by tbe owners of bordering lots, tbe fact of such decree in tbe Circuit Court having been made, may be competent evidence aiding to prove tbe acquisition of tbe right of private way by the owners of bordering lots.
Upon tbe views presented, it is manifest that tbe instruction of tbe Court below, was erroneous, in tbe direction that tbe decree in Chancery was void and of no effect to abolish tbe street; so far at least, as tbe public use is concerned. Tbe fact that the decree was made by consent between tbe parties, is not considered cause for declaring it void, on that account and without more.
Second, While it is thus held, that tbe decree in tbe Circuit Court, is by force of tbe decree in tbe Chancery Court, to some extent, and as to tbe public, void, it is not intended to declare that it is void of itself considered, as to all persons and for all purposes.
So far as relates to the land of the Academy, over which tbe old street ran, tbe decree of tbe Circuit *160 Court is avoided by tbe decree of the Chancery Court, to the extent of the public right of way.
Whether the decree of the Chancery Court is void in itself, and as against the owners of other land across which the old street ran, is another question. For the defendarit, Anderson, it is claimed that it is void absolutely, as to all persons, and for all purposes. How this is, remains to be seen.
If the proceeding establishing a public highway, be a strictly judicial proceeding between parties litigant, and to be governed by the rules applicable to such judicial proceedings, the decree of the Circuit Court would probably have to be declared an utter nullity. But it is not strictly a judicial proceeding, though conducted in a court, and according to forms usual in courts. It is summary, and to some extent, ex parte, and in a tribunal exercising, in the case, a special jurisdiction. Notice does not appear to have been given to the owners of lands taken, nor compensation paid or awarded. These defects or irregularities, would, in a proceeding strictly judicial, avoid the proceeding. But proceedings by agents of the State, authorized to take private property for public use, as for highways, are not of a nature purely judicial.
The taking of private property for public use, is an act of the political power of the State. The necessity or utility of the taking, is a question to the legislative department of the government, and exclusively in the control of that department. So far as relates to the question of the utility or necessity of the taking, the courts have no jurisdictive authority, and *161 can exercise no control. Whether the purpose or use for which it is taken, is a public use, is another question; and this is considered within the cognizance of the judicial department: Cool. Const. Lim., 538, n. 3, and 540; 21 N. Y., 597; 27 Missouri, 373; 4 Coldwell, 406.
The Legislature has the power to take the private property for public use, by statute direct, or may delegate the power to agents who may exercise the same discretion, in such manner as the empowering statute may prescribe.
The owner of the property cannot contest the right to take the property for a public use. Whether the necessity or utility exist, he cannot controvert. The power is absolute with the legislative department of the government, and does not depend on the will of the owner.
The property may be taken, if the Legislature so choose, without any notice to the owner of the taking or proceeding by which it is taken. The right to notice of the assessment of the compensation is said to be otherwise. To that notice, the owner is considered to be entitled of right. Sedg. Stat. and Const. Law, 519; 2 Mich., 427; Cool. Const. Lim., 563.
It may be taken before compensation be actually paid to the owner. But, under the Constitution of the State, and also of the United States, the compensation must, be made. If an adequate remedy be provided, by which the owner can enforce compensation, that is enough to authorize the property to be taken in the first instance. Such is the settled construction put upon *162 the constitutional law on this subject: 2 Kent. Com., 340, n.; 2 Dev. and Batt., 451 j Cool. Const. Lim.
If tbe compensation be not paid, or an adequate remedy provided by law to enforce it, Chancery, as illustrated in the present case of the Female Academy against the Mayor, etc., of Nashville, has jurisdiction to entertain a bill, and enjoin the taking, or declare the taking void, and to restore the owner to his property: 2 J. C. B., 161; 1 Bald., 205; 3 How. Miss., 250; 43 Ill., -
When the Legislature takes or authorizes the taking of private property for public use, as has been before stated, the courts have no power to control the discretion of the Legislature, so far as relates to the necessity or utility for taking; and the taking, if for a a public use, must be deemed by the courts, to be for the public welfare. The establishing of a public highway, must be assumed to be for the public welfare. The public welfare requires it to be laid out. It may be done summarily, without notice of the taking to the owner, without his consent, and against his will, before compensation, paid or assessed; and the taking is not utterly void; certainly not so void in the first instance, as to make the agents of the State trespassers for the taking.
The owners of the land taken, may waive compensation, and may waive notice of the assessment of compensation, and may waive objection to irregularities in the proceeding. If they do so, other persons have no cause of complaint or objection; and so also, if they do not waive the irregularities, other persons have *163 no concern in the matter: 6 N. H., 244; 1 Seld., 568; 2 Met., 520; a person may waive a Constitutional, as well as a Statutory provision for his benefit^ as where a private road is laid out in an unconstitutional manner, with consent of the owner of the land: 24 Wend., 337; 5 Hill, 468; 6 Hill, 47; 3 Comst., 511, 518; Sedg. Const. and Stat. Law, 111.
From these views, it seems fair to conclude, that the proceeding' of the kind, ought not to be dealt with as a strictly judicial proceeding between parties litigant over private rights, and ought not to be held void for irregularities ordinarily avoiding judicial proceedings.
These views have sanction in well considered authorities. In the State vs. Richmond, 6 Foster’s New Hampshire Reports, 232, where certain officers called selectmen, who were authorized b.y, law to establish public roads, laid out a highway, without giving the notice to the land owners prescribed by the Statute, and without awarding damages to some of the owners whose land was taken, it was held, that the. proceeding ' was not void in the sense of an absolute nullity, because of the irregularities; and that the land owners might waive the irregularities, and thus the proceeding be valid to establish the highway; and that advantage could . be taken of the irregularities, only by the persons in regard to whom the irregularities occurred: 6 N. H., 232; Cool., 561, 562, 464, n; 11 Wend., 149; 13 Gray, 31; 2 Kent. Com., 339, n. f.; 18 Ill., 276; 25 Id., 478, 519; 3 How. Miss., 259; 3 Mich., 496; 7 Id., 78; 11 N. Y., 308; 1 Seld., 568.
*164 The conclusion is, that the proceeding in the Circuit Court of 1852, though irregular, is not an absolute nullity, not void as to all persons and for all purposes.
It was, however, voidable at the instance of those whose land was taken, as to each for himself, and not for the others.
Any one for himself, and perhaps for all, by proper frame of bill, could have a bill in Chancery to enjoin and vacate the decree of the Circuit Court.
And we are not prepared to say, that other modes of avoiding or defeating the decree were not possible.
Nor are we prepared to say, that the validity of the decree is closed against inquiry in every collateral proceeding. Its validity may depend on extrinsic circumstances, such as the party whose land is taken may be able to avail himself of. If the compensation was actually made or provided, or if compensation were waived by the owners of the land, or if lapse of time and adverse user, or acquiescence on the part of the owner, for sufficient time, be shown, the decree cannot be said to be an absolute nullity, in an action where such owner or his privy is controverting the right of way. In an action of the kind, though collateral in the strict sense applicable to judicial proceedings, effect may be given to the decree to some extent. In such action, the party whose land was taken, may show that no compensation was assessed, or paid, or provided for, and that no waiver has been made, and no adverse user had to ripen into an absolute right.
*165 And then, it may be tba-t tbe validity or invalidity of tbe taking and tbe proceeding, may be shown in a collateral proceeding.
Generally, in such collateral action, it is not open to a stranger to tbe land, to assail the validity of tbe proceeding, by reason of such irregularities as want of compensation or notice to tbe owner of the land.
Tbe conclusion is, that tbe decree of tbe Circuit Court under consideration, is not an absolute nullity as to all persons, and for all purposes; nor is it an absolute and conclusive validity as to all persons and for all purposes. Proofs may be gone into, to give it, or avoid its validity or effect.
It is not designed here, to apply tbe rulings of this case to tbe proceedings for taking private property for public use, other than .< cases of tbe kind in band, where the taking and use is absolutely for tbe public. How far they may be applicable to proceedings, where private property is taken for corporations, to some extent of private character, as railroads and tbe like, and where the property is to be used for a franchise, and granted to such corporation, it is not tbe purpose of this opinion and decision - to determine.
What is here said' on this branch of the subject, is stating general principles. Usually and properly, tbe Legislature, when it delegates tbe power of eminent domain to agents, prescribes tbe modes of its exercise, with a view to guard the people against their property being taken, oppressively or unnecessarily, or, for purposes rather private than public. And to this end, it is usually provided that tbe person whose property is *166 taken, shall have notice to some extent, and be entitled to some extent, to controvert the necessity or utility of the taking, and the assessment of compensation, etc.
Reverse the judgment of the Court below, and remand for new trial.