ANNA M. ELLIOTT v. B. W. WILLIAMSON Adm'r.

TAXES, MUNICIPAL. *Statute of limitations. Presumption of payment.* The general statute of limitations is no defense to the enforcement of its taxes by a municipal corporation, nor will the lapse of time or laches of the city officials prevent the recovery of a tax properly assessed if clearly shown to be unpaid, but the lapse of time, in connection with other circumstances, may raise a presumption of fact that the tax has been paid, which will establish the defense of payment unless rebutted.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

MALONE & WATSON for complainant.

HUMES & POSTON for defendants.

COOPER, J., delivered the opinion of the court.

Bill filed upon a covenant of general warranty of title to a lot of ground in the city of Memphis, to

recover money paid in satisfaction of taxes claimed to be due the city for the year 1857, and to be a lien on the land covered by the warranty. The bill was dismissed and complainant appealed.

The lot in question was sold and conveyed to C. Kortrecht on June 5, 1857, by the Planters Bank, that bank having bought it several years before from the Farmers and Merchants Bank of Memphis. On May 8, 1861, Kortrecht sold and conveyed the lot to Hiram Tillman, defendant's intestate, and he, on October 26, 1868, sold and conveyed the lot to the complainant with a covenant of general warranty. All the taxes on this lot, State, county and city, both before and after the year 1857, were paid; except the United States district tax of 1864, for which the lot was sold and afterwards redeemed. Kortrecht was a man of wealth up to and including the year 1873, a good business man, and always specially careful in looking after his taxes. He died in 1878 insolvent, and his wife died the next year. Since the commencement of this litigation, the papers of Kortrecht have been examined, and no receipts for taxes paid on his property can be found prior to the year 1866. Tillman paid the taxes on the lot promptly, lived in the city from 1868 until his death in 1876, was solvent, and left a solvent estate. No claim for the city tax of 1857 seems to have been made on any one, and the existence of the tax was unknown to the complainant until a few days before she paid it. The tax was assessed by the municipal authorities for the fiscal year beginning July 1, 1857, and ending June 30, 1858, The tax not having

been paid, the. lot on which it was assessed was sold by the tax collector in 1858, and bought in by the city. The complainant sold the lot agreeing to pay the taxes, and her agent learned through a private abstract office, and upon investigation that according to the original tax books of the city the tax for the fiscal year of 1857 was unpaid. Under his advice, the complainant paid the tax on January 10, 1882, without giving the personal representatives of Tillman or Kortrecht any notice. The back-tax collector was insisting upon the payment of all taxes which appeared from the city tax books to be unpaid, had given notice through the city papers to delinquent tax payers to come forward and pay, and was filing bills against delinquents as fast as they could be prepared.

During the civil war Memphis was occupied by the armies of both sides, and all the records of the courts were carried South when the Federal troops entered the city in 1862. The result was loss of papers and confusion in the public records. The State and county have not, therefore, attempted since the close of the war to collect any State or county taxes assessed before the year 1865. The corporation of the city of Memphis, however, assessed and colletced taxes during the war, and the city and its receiver collected back-taxes to the year 1856, and earlier.

From these facts it may be conceded, and the case has been argued upon the assumption, that the payment of the tax in controversy by the complainant was to avoid a threatened suit therefor by the city receiver, and that the successful prosecution of such a

suit would have been *pro tanto* an eviction within the covenant of warranty of the defendant's intestate. But as the payment was made without any previous notice ·to the defendant, the burden is upon the complainant to show that the tax was a valid, subsisting lien upon the land at the time of its payment. For the right of recovery is dependent upon the fact. The defenses relied on are the statute of limitations, and payment. The defense of payment is sought to be made out, not by direct proof, but by lapse of time and other circumstances.

By a well known rule of the common law time does not run against the sovereign or government. And therefore it has been almost uniformly held by the courts that the ordinary statutes of limitation, which only bear the remedy, do not bind the State: *Single-ton* v. *Ake*, 3 Hum., 626. The rule is founded on the principle of public policy that the property and rights vested in the government for the benefit of the whole community should not be dependent upon the negligence or bad faith of the agents or officers to whom the conduct of public business must necessarily be entrusted: *Swan* v. *Mayor and Aldermen of Knox- ville*, 11 Hum., 130. Lapse of time alone cannot, therefore, impair a public right or extinguish a public debt by raising a conclusive presumption of grant or payment, when it is made clearly to appear that no grant or payment was ever in fact made: *People* v. *Supervisors of Columbia County*, 10 Wend,, 363; *United States* v. *Williams*, 4 McLean, 567. For neither lapse ·of time nor the laches of public officials can prevent

the State from asserting a right or obligation, admitted, or clearly established.

The authorities are hopelessly in conflict whether this prerogative of government extends to municipal corporations considered as branches of the government. The weight of reason, and perhaps of authority, is to concede the exemption to such corporations as to all matters in which they stand in the place of the State for public purposes: *Sims* v. *Chattanooga,* 2 Lea, 694. And it has accordingly been held that taxes assessed by a municipal corporation for the public benefit stand like the taxes assessed by the State: *City of Memphis* v. *Looney,* 9 Baxt., 130; *State ex. rel.* v. *Butler,* MS. opinion of this court at April term, 1882. The general statute of limitations was, therefore, no bar to the enforcement by the city or its receiver of taxes in controversy, nor would the lapse of time or laches of the city officials prevent a recovery of the tax if clearly shown to be properly assessed, unpaid, and a valid lien on the property on which it was levied.

But these principles are entirely consistent with the rule, equally well established, that although lapse of time does not, of itself, furnish a conclusive legal bar to the demand of the sovereign or State, yet, if the demand might have been paid, or the adverse claim might have had a legal commencement, such payment or commencement may be presumed after many years of uninterrupted, adverse possession or enjoyment. The presumption in such case, subject to rebuttal, is one of fact to be deduced from the entire evidence and circumstances according to the common and received

tests of truth. Presumption of fact, says Mr. Green-
leaf, "differs from presumptions of law in this essen-
tial respect, that while those are reduced to fixed rules,
and constitute a branch of the particular system of ju-
risprudence to which they belong, these merely natural
presumptions are derived wholly or directly from the
circumstances of the particular case, by means of the
common experience of mankind, without the aid or con-
trol of any rules of law whatever": 1 Gr. Ev., secs.
44 and 45. Accordingly royal grants in England have
been found after an indefinitely long entertained, peace-
able enjoyment, accompanied by the usual acts of own-
ership: *Rex* v. *Brown,* cited Cowp., 110; *Mayor, etc.,*
v. *Horner,* Cowp., 102. "For," to borrow the lan-
guage of Coke's reports, "*tempus est edax verum,* and
records, and letters of patent, and other writings either
consume or are lost or embezzled, and God forbid that
ancient grants and acts should be drawn in question,
although they cannot be shown, which at first were
necessary to the perfection of the thing": *Bedle* v.
*Beard,* 12 Rep., 5. This court from an early day
has given effect to such presumptions. "Prescription
and presumption," says Overton, J., in the leading case
on the subject, "must be resorted to for the peace,
order and happiness of society": *Gwathrey* v. *Stump,* 2
Tenn., 308. "Indulgent to the weakness of our na-
ture," says Crabb, J., "as a matter of public policy,
to promote the repose of society, and to put down
litigation, courts intend the existence of facts when it
is unreasonable to expect evidence of them": *Hanes*
v. *Peck,* M. & Y., 228, 237. A grant from the State

will therefore be presumed from the peaceable enjoyment and uninterrupted possession of twenty or more years. "The rule," says Totten, J., "is not founded merely on policy and convenience; but it is a presumption of fact, reasonably to be inferred from long and undisturbed possession and enjoyment, that the claimant had a legal and valid title at the commencement, which, from lapse of time and accident, he may not be able to adduce. In such case a grant, or other proper evidence of title will be presumed, but this presumption may be repelled by proof of other facts": *Brock* v. *Burchett,* 2 Swan, 27.

In like manner, at common law every debt evidenced by specialty or judgment was presumed to be paid after the lapse of twenty years: Freeman on Judgments, sec. 464. By early judicial legislation in this State, the period of time required to raise this presumption was reduced to sixteen years: *Blackburn* v. *Squib,* Peck, 64. The presumption is not conclusive, but merely throws upon the party seeking to enforce his debt after the lapse of the prescribed period of inaction, the burden of proving that the debt is unpaid: *Stanley* v. *Kinzer,* 7 Lea, 454; *Thompson* v. *Thompson,* 2 Head, 405. Independent of this arbitrary presumption from the lapse of a fixed period of time, the lapse of an indefinite period, though less than the full term of presumption, is a proper circumstance for the consideration of the jury, and may, in connection with other circumstances, authorize the presumption of payment as a fact: Freeman on Judgments, sec. 465. Eight years with circumstances have been held sufficient

to go to a jury in one case, and thirteen years in another: *Leiper* v. *Erwin*, 4 Yer., 97; *Husky* v. *Maples*, 2 Cold., 25. Men cannot be required to preserve through life the acquitances which prove the payment of debts. No reason occurs why the State or municipal corporations, any more than individuals, should be exempt from the presumption of fact arising from lapse of time, which merely shifts the burden of proof. The State is bound by the acts of its officers like natural persons: *State* v. *Hamilton*, 11 Hum., 47; *State* v. *Crutcher*, 2 Swan, 515. And the State and, *a fortiori*, municipal corporations must conform to, and be governed by the rules of evidence and practice of the courts in suits between individuals. Taxes cannot have any higher character or immunity than debts due by judgment. The assessment is in the nature of a judgment, and the warrant for the collection operated like an execution: *Hopkinson* v. *Springfield*, 12 N. H., 328.

The claim of the city in the case before us may be resolved into the debt evidenced by the tax, and the lien on the land given by the statute. The only evidence introduced in support of the claim is the assessment on the tax books for the year 1857, and that there is nothing in the book to show satisfaction or payment. But it is also shown that the city in 1858 sold the lot in satisfaction of the tax, and bought it in for the amount due. *Prima facie* there ought to have been an entry of satisfaction on the tax book, and the fact, which is conceded, unexplained is an end of the claim for the debt. And no explanation is offered. In this view, conceding the validity of the

tax sale, the question is whether the lapse of time and other circumstances do not raise a presumption that the land was redeemed and ·reconveyed. The complainant seems to have proceeded in the preparation of this case ·on the idea that it was a presumption of law that all tax sales were invalid, a presumption fairly unwarranted by the result of litigation over tax titles. If we treat the sale as void, it is still a fact tending to show that the city at that time was prompt in taking steps to enforce the collection of taxes. It is shown, moreover, that the taxes in this particular lot, both before and after the year 1857, were promptly collected and paid. The collection of subsequent taxes from year to year afterwards is moreover a strong circumstance to show the payment of that tax, the demand of the subsequent taxes not being accompanied by any claim for the particular tax: *Attleborough* v. *Middleborough*, 10 Pick., 378, cited approvingly in *Shuman* v. *Clater*, 3 Head, 445. The fact that Kortrecht was specially careful in looking after his taxes, and prompt to pay them, and that he and defendant's intestate were both solvent during the respective periods of the ownership ·of each, are also strong circumstances in the same direction. When we add to all these facts, the peaceable and continuous possession of the property without any claim of lien by the city for over twenty-three years, and over seventeen years if we exclude the time between the 6th of May, 1861, and 1st of January, 1867, we think there is raised, in the absence of any rebutting testimony, a presumption of fact that the tax has been long since paid. Affirm the decree with costs.