LACKLAND, Respondent, v. NORTH MISSOURI RAILROAD COMPANY, Appellant.

1. The grant to a railroad company of a right of way merely over a public street in a city or town will not authorize the placing of any obstructions in the street such as will render it useless as a street; for the purpose of establishing depots, depot yards or other structures for the convenience or business of the railroad company, ground must be procured not already dedicated to uses inconsistent with such purpose.

2. The grant to a city of a power to " open, alter, abolish,' widen, extend, establish, grade, or otherwise improve and keep in repair streets" would not authorize an appropriation of a street to such uses as would be entirely inconsistent with its use as a street.

3. The right of the owner of a lot in a town or city to the use of the adjoining street is as much property as the lot itself; the owner of the lot can not be deprived of this right by the obstruction of the street without compensation. It is immaterial in such case whether the owner of the lot owns to the middle of the street or not.

*Appeal from St. Charles Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*Lewis, Wells,* and *Wickham,* for appellant.

I. The court erred in giving and refusing instructions. There was no injury to or interference with the soil owned by the plaintiff. Plaintiff is not entitled to recover for loss or injury consequent upon a proper use by another of the adjoining soil. Even if plaintiff had an ownership to the middle of the street, yet the street being still in the hands of the public as a common easement, the mere hindrance of the public in the enjoyment of such easement could be no injury to plaintiff's reversionary fee. (12 Mass. 226 ; 17 Johns. 92.; 8 Johns. 421 ; 1 Pick. 417 ; 2 Stockt. 352 ; 16 N. Y. 97 ; 7 Barb. 508 ; 4 Conn. 195 ; 10 Barb. 369 ; 38 Maine, 29 ; 25 Verm. 49, 465.) The city authorities had full power under their charter to grant the right of way to defendant. (Sess. Acts, 1849, p. 270, § 10 ; 2 Stockt. 352 ; 15 Barb. 193.) The use of the street by defendant for the purposes of its railroad was authorized by legislative enactment in the charter of the defendant. (Sess. Acts, 1851, p. 486, § 11 ; 6 Whart. 215 ; 25 Verm. 49, 465 ; 3 Duer, 119 ; 23 Barb. 483 ; 38 Maine, 29 ; 27 Penn. 339 ; 4 Cush. 152.) The act of the legislature is valid and constitutional. No vested rights are interfered with unless it be those of the public. The whole scope and spirit of the instructions given for plaintiff are based upon this error, that a private individual can recover damages for injury or inconvenience which, if sustained at all, are shared by him in common with the public

at large. Such actions can never be maintained except on the ground of some direct injury which has peculiarly affected the plaintiff, and which is no part or parcel of the public wrong involved in the same transaction. The obstruction of the highway, if unauthorized, is purely a public wrong. The dimunition in value of plaintiff's lot is not such a special and peculiar damage as will bring plaintiff within the exception. (Angell on Highways, § 285; Carth. 191; 1 Bibb, 292; 1 Esp. 148; 7 Cow. 609; 1 Handy, 82.) The power to grant right of way along a street must reside in either the legislature, the corporate authorities of the city, or the owners of the adjacent lots. If it resides in either of the two first mentioned, then the acts of defendant were lawfully authorized and plaintiff was not entitled to recover. It does not reside in the owner of the adjacent lot. He has no greater interest in the street than any member of the community. His property is not required to be taken for the public benefit. In this case, plaintiff can not be considered as owning the soil in the street. The legal presumption of ownership to the middle of the street, which has been asserted by some of the eastern authorities, will not be recognized here. If plaintiff does own to the middle of the street, still he is not the proper party to be looked to for a grant of the right of way. As such owner, he has only a reversionary right to the soil after it shall cease to be a street. In this case the street still remains a street; the complaint made is for an obstruction of the public easement; for any abuse of the grant the defendant is liable to the public.

*H. C. Lackland*, for respondent.

I. The court committed no error in giving and refusing instructions. The grant of the right of way by the legislature and city council does not exclude the idea that the proprietor adjoining the street should have compensation for any injury he may sustain by converting a common street into a railroad track. (21 Mo. 25.) The company, after getting the consent of the state and city, should have con-

Lackland v. North Missouri Railroad Co.

demned the right of way. The grant of the right of way did not justify the defendant in the acts complained of. The street is so obstructed that it can no longer be used as a street. The plaintiff is the owner of the soil to the middle of the street; this ownership is subject only to the easement of the public as a common highway. He has a special property in the street as a highway. This property is distinct from and independent of the ownership of the soil in the street. It can not be interfered with without a regular condemnation and compensation. (2 Smith's Lea. Cas. 98; 11 Mo. 32; 26 Mo. 193; 27 Mo. 373.) The charter gives the city no power to authorize such an obstruction of the street.

NAPTON, Judge, delivered the opinion of the court.

This case does not involve the question whether a railroad, in a street of an incorporated town or city, is of itself such an obstruction to it or such a perversion of it from its original purposes as to furnish a ground of action to the proprietor of adjoining lots. That question has been the subject of discussion and decision in several of the courts of the United States, but the decisions have not been altogether uniform, and the law upon the subject can not be regarded as fully settled. Angell, in his work on Highways, after a reference to most of the cases, expresses the opinion that, at the date of his work, the weight of authority was, that such roads are not necessarily nuisances, but might be so regulated and conducted as to be properly considered an improved mode of using the public easement. (Angell on Highways, 224.) In the work of Judge Redfield on Railways, a dissatisfaction with the current of American decisions on this point is intimated, and a belief is expressed that these modern improvements upon highways and streets, however desirable and valuable in the main to the public, are yet such material changes of the public easement as, upon principles of reason and justice, should be attended with compensation to the proprietors of lands and lots adjoining the streets or highways. (Redfield on Railways, 160.) It is not neces-

sary, in this case, that we should express any opinion on the point, for it is quite obvious that the case did not turn upon it.

By an ordinance of the city authorities of St. Charles, passed October 15, 1855, it was enacted that " the right of way through Main street up to a point one hundred feet north of the point of intersection of Clark and Main streets be and is hereby granted to the North Missouri Railroad Company, upon said company complying with the requisition made in the report of the committee appointed to take into consideration the request of said company." The consideration of this grant to the railroad company appears, from the reports made to the corporation, to have been their construction of various improvements upon other streets of the city, the cost of which amounted to several thousand dollars, and there is no dispute that the company performed her part of the contract.

All the acts done by the railroad company, upon that part of Main street lying immediately adjacent to the plaintiff's lot, were done by virtue of the supposed authority conferred on the company by this ordinance, and it is upon this ordinance that they rely for a justification.

The proofs upon the trial, in conformity to the allegations of the petition, showed very clearly what the railroad corporation had done ; and the question is, whether their acts are warranted by the grant of way from the city of St. Charles. If they are not, then the defendant's justification fails on that ground ; but if the ordinance should be construed as authorizing all that had been done under color of its authority, the question still remains, whether the corporation by its charter had any power to do the acts themselves or to authorize such acts to be done by others.

It appears that the company built a side track along the main track in the street fronting the plaintiff's lot, and a switch track connecting the two others ; that these tracks rest on embankments, which of themselves entirely obstruct all passage of vehicles over any part of the street. But, in

addition to the three tracks, two switch frames and a cattle-way have also been erected. The side track, which was immediately on the edge of the street next to the plaintiff's lot, is used as a standing place for the cattle, freight and passenger cars when not in motion, and thus at all times long trains of cars are standing on this track, cutting off all access to the adjoining lots, even by foot passengers. Freight cars are also loaded and unloaded at this place. In short, the entire street in front of plaintiff's lot is used as a depot yard, and was, according to all the testimony at the trial, rendered totally useless as a street. These facts were passed upon by the jury, and we therefore assume them to be as stated.

The only question, then, presented by the case is, did the grant of the *right of way* by St. Charles authorize the company to go to this extent, or, if it did, had the corporation any power to make such a grant so as to deprive the plaintiff of his right to compensation ?

In construing a grant of power to a private corporation the power must be given in plain language or by necessary implication. Whatever is doubtful is against the corporation. With this rule of construction as a guide, the supreme court of Pennsylvania, in the Commonwealth v. Erie & N. E. R. R., 27 Penn. 351, held that the company, though invested by their charter with a right of way over and along streets, highways, &c., but with the restriction "not to obstruct or impede their free use," was not authorized to place any material obstructions in the streets or highways they passed over or crossed beyond what was absolutely necessary. Any change of grade, therefore, unless the road or street was adopted to the new grade at the expense of the railroad company, any embankments, ditches, bridges, &c., which would prevent the free passage of vehicles, at times, when the cars might not be on it, were regarded as unauthorized. This opinion is the more significant as coming from a court holding the most liberal views on the general question, and maintaining at all times the absolute control of the state over all its highways, whether town or country. For in Philadel-

phia & Trenton Railroad Co., 6 Whart. 44, Judge Gibson had said emphatically: " A highway is the property of the people, not of a particular district, but of the whole state, who, constituting as they do the legitimate sovereign, may dispose of it by their representatives and at their pleasure. Highways, therefore, being universally the property of the state, are subject to its absolute direction and control." The learned judge recognized no distinction between streets in incorporated cities and public highways; he declared them all " subject to the paramount authority of the legislature, in the regulation of their use by carriages, rail-cars, or means of locomotion yet to be invented."

In the case of Tate v. The Ohio & M. Railroad Co., 8 Porter, Ind. 479, a city ordinance authorized the construction of the railroad on the street in front of the plaintiff's lot, and the company built their track on an embankment four and a half feet high in the centre of the street, the steep sides of which prevented all ingress and egress from one side of the street to the other. Without deciding whether the ordinance would have been a protection against plaintiff's claim had the track been laid at the grade of the street and used in that way for the passage of their trains, the court pronounced the change of grade an obstruction not authorized by the city ordinance, and therefore sustained the action for the injury which it occasioned to the plaintiff's lot.

In these cases it will be perceived that a grant to a railroad company of a right of way over a street has not been allowed to justify acts, which are in every respect trivial obstructions compared to those complained of by the plaintiff below in this case. Here was not a simple obstruction by the elevation of the grade of the street, but in reality an entire conversion of it, by permanent structures of various kinds, to such uses as virtually blocked it up for all the purposes of a street. A mere right of way over a public street, granted to a railroad company, does not, in any legal or common acceptation of the words, imply a right to establish depots, or depot-yards, or other structures for the conve-

nience or business of the road.   For these purposes the com-
pany must procure sufficient ground, not already dedicated
to uses entirely inconsistent with the purposes to which they
propose to apply it.

With this view of the proper construction of the ordinance
passed by the city authorities of St. Charles, it is unneces-
sary to extend the inquiry into the power of that city, under
the charter, to permit such an appropriation of a street as
has been made by the North Missouri Railroad Company.
The power to " open, alter, abolish, widen, extend, establish,
grade, or otherwise improve and keep in repair streets," is a
very extensive grant, but it can hardly be construed to reach
a case like this.   A street may be " established or opened"
on ground where no street existed before, but, of course,
this can only be done by compensating the owners of the
ground.   A street may be widened, but this can only be
done upon the same terms.   A street may also be abolished,
but in that event the ground reverts to its original proprie-
tors, whether they are the owners of coterminus lots or those
who first dedicated the streets to the public use.   It is man-
ifest that such an appropriation of a street as was made in
this case does not look to its abolishment; it only tends to
its monopoly.   It is still used as a thoroughfare ; but appro-
priated exclusively to the use of a particular corporation and
a particular description of transportation.   It is no exercise
of the power to abolish, and it is not pretended that it had
any tendency to " improve" or " keep the street in repair."
The charter of St. Charles, therefore, did not warrant such
an appropriation of Main street as is claimed.

We do not wish to be understood as saying that the legis-
lature could not grant such a power to the corporation ; we
only speak of the powers already conferred.

As to the ownership of the soil of the street, the question
is of no practical importance in this case.   The right of the
owner of a lot in a town to the use of the adjoining street is
as much property as the lot itself, and the legislature can no
more deprive a man of one than of the other without com-

pensation. To what extent this right is impaired by the mere construction of a railroad over it, or whether it is impaired at all by appropriating it to such a use, is a matter about which this record requires us to give no opinion. In Pennsylvania, the power of the legislature to authorize the building of a railroad on a street or other public highway is regarded as settled; (Commonwealth v. Erie & N. S. Railroad, 27 Penn. 351;) and so it is considered to have been declared in England; (1 Barn. & Ad. 30;) and in Massachusetts; (23 Pick. 28;) and in New York, (7 Barb. 509.) But we have not observed any case, even where this power is conceded, which allows the erection of depots, or car-buildings, or any other structures, which materially obstruct the use of the street or highway as a public easement. It is immaterial whether the plaintiff owned the ground to the middle of the street or not, as his right of action grew out of his ownership of the lot, and so the case was put to the jury on the trial.

Judgment affirmed. The other judges concur.