THE ST. VINCENT FEMALE ORPHAN ASYLUM OF THE CITY OF TROY. Respondent, *v.* THE CITY OF TROY, Appellant.

In August, 1853, the common council of the city of Troy passed a resolution, to the effect that H. street, in that city, be reduced to a width of forty feet, the excess to be taken from the east side of the street; and giving the owner of the adjoining premises permission to enclose the excess within its grounds. This was done ; the strip so taken from the street being enclosed by a permanent wall, which remained until April, 1874, when the city authorities, under resolutions of the common council, revoking the former resolution, withdrawing the permission therein given, and directing the opening of the street to its original width, commenced to remove it; the first of these resolutions was passed in 1868. In an action to recover damages for the alleged trespass in removing the wall, *held*, that the resolution of 1853 was notan attempt to exercise the power given by the charter of said city (§ 15, chap. 131, Laws of 1816, as amended by chap. 296, Laws of 1834), to ascertain, designate, establish, widen or alter a street; that it was simply an attempt to give a permission to enclose for private use a portion of the street, which permission the common council had no authority to give ; and that, therefore, the resolution was insufficient to transfer any title to plaintiff or to extinguish the public easement in the part of the street so enclosed.

Also *held*, that said easement was not extinguished by adverse possession ; 1st., because plaintiff's possession, being under a license, was not adverse within the statute of limitations, at least prior to the resolution of 1868, and this although the license was invalid ; 2d., that such encroachment

upon a public highway, although for more than twenty years, could not destroy the public right, or take away the authority of the public officers to remove and abate it.

*St. Vincent Female Orphan Asylum* v. *City of Troy* (12 Hun, 317), reversed.

(Argued November 13, 1878; decided January 28, 1879.)

Appeal from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial. (Reported below, 12 Hun, 317.)

This action was for an alleged trespass.

The answer alleged that the *locus in quo* was one of the public streets of the city of Troy, and that the acts complained of were lawfully done by the city authorities in the maintenance and control of said street.

In 1853, Peter Havermans owned and was in possession of a lot on the south-west corner of Washington and Hill streets, in said city of Troy; which lot was bounded north by Washington street, and west by Hill street. Havermans erected upon said premises the Troy hospital. The plaintiff succeeded to his title. On the 24th of August, 1853, the common council of the city of Troy adopted and placed on record a resolution reducing the width of Hill street, southerly from Washington street to forty feet, and directed the excess beyond forty feet to be laid off on the east side of the street; and further declared that the Troy hospital was at liberty to enclose that excess within its grounds for the use of that institution. In pursuance of that resolution, the east line of Hill street was immediately fixed and determined by the city surveyor, leaving the street forty feet wide; and the lot on the east side was from that time occupied, and improvements were made with a view to such designation of the street line; a heavy and permanent wall was built along the line so designated, and such wall was maintained by Havermans and those holding under him until April, 1874, when the city authorities commenced its removal.

In July, 1868, the common council passed a resolution revoking the former resolution and revoking the permission therein given. In December, 1873, the common council, by resolution, directed the city engineer to remove the wall. This he commenced to do when he was restrained by injunction. This was the trespass complained of. On the trial the court directed a verdict for plaintiff, to which defendant's counsel duly excepted. A verdict was rendered accordingly.

Further facts appear in the opinion.

*R. A. Parmenter*, for appellant. The common council of the city of Troy cannot give away the land used for a public street, or in any way disturb the free and unobstructed public use thereof without express authority from the Legislature. (*Brady* v. *Mayor, etc.*, 2 Bosw., 173; *F. L. and T. Co.* v. *Carroll*, 5 Barb., 649.) The erection of a stone wall within the lines of a public highway so as to reduce its width is a public nuisance which the common council has a right to abate. (*Davis* v. *Mayor, etc.*, 14 N. Y., 506.)

*Olin A. Martin*, for respondent. The common council had power to establish the boundary of the street as it did by the resolution of 1853. (Charter City of Troy, passed April 12, 1816, § 15.) Defendant, having fixed the boundary, and plaintiff, having in reliance thereon permanently improved and occupied the land up to that line, is estopped from denying it to be the true boundary line of the street. (*Brown* v. *Bowen*, 30 N. Y., 519; *Hogan* v. *City of Brooklyn*, 52 N. Y., 286; *Corkhill* v. *Sanders*, 44 Barb., 219; *Regina* v. *Chorley*, 12 Q. B., 515.) The fee in the soil to the centre of the street was in plaintiff and its grantors as adjoining owners. (*Bissell* v. *N. Y. C. and H. R. R. R. Co.*, 23 N. Y., 61; *Perrin* v. *N. Y. C. and H. R. R. R. Co.*, 36 id., 120; *Herring* v. *Fisher*, 1 Sandf., 334, 348.) Upon the reduction of the width of the street and the abandonment of the excess the easement therein was relinquished and vacated, and the

adjoining owner was restored to his original dominion in the soil discharged of the easement. (3 Kent Com. [10th ed.], 573, and note *b; Jackson* v. *Hathaway*, 15 J. R., 447; *Corning* v. *Gould*, 16 Wend., 531; *In re John and Cherry Sts.*, 19 id., 675; Angel on Highways, § 326; *Harris* v. *Elliott*, 10 Pet. [U. S.], 25–26.) The resolution of 1853 though not a license operated as an abandonment of the easement. (3 Kent. Com., 609, n. 1; 1 Addison on Torts [D. & B.'s ed.], 161; *Winters* v. *Broderick*, 8 East, 308; *Moore* v. *Rawson*, 3 B. & C., 332; *Liggins* v. *Inge*, 7 Bing., 682; *Jamieson* v. *Milleman*, 3 Duer, 260; *Reg.* v. *Inhabitants of Bedfordshire*, 4 E. & B., 535–542; *Dyer* v. *Sanford*, 9 Metc., 395; 1 Wash. Real Prop., 401; *Morse* v. *Copeland*, 2 Gray, 302; *Cartwright* v. *Mapleson*, 53 N. Y., 622; 2 Wash. Real Prop. [4th ed.], 372; Gale & W. on Easements.) Plaintiff's possession was adverse to the title of any other claimant. (*La Frombois* v. *Jackson*, 8 Cow., 618; *Smith* v. *Lorillard*, 10 J. R., 356; *Jackson* v. *Woodruff*, 1 Cow., 285.) The fact that the *locus in quo* may have previously been part of a highway, or that the defendant is a municipal corporation, does not avoid the effect or change the character of plaintiff's possession. (*Knight* v. *Heaton*, 28 Vt., 480; *Lessee, etc.,* v. *First Presb. Ch.*, 8 Ohio, 298; *City of Cincinnati* v. *Evans*, 5 id., 594; *Evans* v. *Erie Co.*, 66 Pa. St. R., 222; *Rowan's Exrs.,* v. *Portland*, 8 B. Munroe, 232, 259; *Dudley* v. *Trustees, etc.,* 12 id., 610, 617; 3 Kent Com., 607*n; Hillary* v. *Waller*, 12 Ves., 265; *Peckham* v. *Henderson*, 27 Barb., 213.) The non-user shown by the undisputed evidence in the case was sufficient to extinguish the easement claimed on the part of the defendant. (*Corning* v. *Gould*, 16 Wend., 531; 3 Kent Com., 600; 2 Wash. Real. Prop. [4th ed.], 339; Gale on Easements [3d ed.], 353, 354.)

*Per Curiam.* It seems clear that the direction of a verdict for the plaintiff can only be sustained, if at all, upon the resolution of the common council of the defendant, passed

on the 24th August, 1853. There was evidence that the
locus in quo was previous to that date a part of the street
which was then at least fifty feet wide, and the wall built by
the plaintiff was shown to encroach upon the east side of the
street as then existing, several feet. In fact, it appears from
the testimony of Mann, the source of plaintiffs' title to the
hospital lot, that the claim of the plaintiff was under that
resolution, and its fence and wall was built there under the
permission contained therein.

The important question, therefore, in the case is, as to the
validity of that resolution.

We are unable to see in it any exercise or attempt to
exercise the power to ascertain, designate, establish, widen or
alter a street, given either by the original charter of 1816 or
the amended act of 1834. The provisions of those acts appli-
cable to such proceedings do not seem to have been followed.
It is said that in the case of "altering" a street by narrow-
ing it no proceedings to condemn land are necessary, because
no land is taken. As the act of 1834 is peremptory in requir-
ing that when any of the improvements authorized, including
the "altering" of streets, are entered upon, the proceedings
prescribed must be taken (Laws of 1834, p. 548, § 2) the
argument is strong that such "altering" did not cover the
abandonment of a street, or a portion thereof, to encroach-
ments not for public purposes but for the accommodation of
private persons.

But irrespective of that consideration, the resolution of
August, 1853, seems to us to be not so much an alteration
of the street as an attempt to give to the plaintiff permission
to enclose for an indefinite period, and use for its own con-
venience, a part of the public street already ascertained and
established. (See Indianapolis v. Miller, 27 Ind., 394.)
This we can find no power in the common council to do, any
more than, under the pretence of alteration, to completely
close up a street by resolution without legislative authority.
It can be easily seen how dangerous and mischievous such a
power might be, and it should not be inferred, in the absence

of express language in the charter. (See *Lackland* v. *R. R. Co.*, 31 Mo., 180; *State* v. *Mobile*, 5 Port. [Ala.], 279; *Atty.-Genl.* v. *Heishen*, 18 N. J. Eq., 410.)

Our conclusion is, that the resolution was unauthorized and insufficient to transfer any title to the plaintiff or to extinguish the easement of the public in the part of the street obstructed.

It is urged, however, that under the resolution, although invalid, the plaintiff's exclusive occupation of the street for twenty years has extinguished the public easement by adverse possession. This point is not without difficulty, but we have concluded that the plaintiff's occupation, at least previous to the rescission by the common council in 1868, was not an adverse possession within the statute of limitations.

The occupation of a grantee of the fee is perhaps hostile to his grantor, but not so as to a licensee. (*Babcock* v. *Utter*, 1 Abb. Ct. App. Dec., 27; *Jackson* v. *Babcock*, 4 J. R., 418; *Luce* v. *Carley*, 24 Wend., 451; 1 Washburne on Real Prop., 400, n. and cases cited.)

It may well be, as the plaintiff's counsel contends, that if the license had been valid and acted upon, it would have been irrevocable, as between private persons, as being upon the land of the licensee. But although we hold it invalid, the entry of the plaintiff was, nevertheless, under it, and, in the language of SELDEN, J. (1 Abb. Ct. App. Dec., 37), "the holding is not adverse." If the license were valid and irrevocable, the plaintiff's right would be perfect, but not by expiration of time. The moment it was acted upon, as plaintiff contends, the easement would be extinguished. The lapse of twenty years would hardly strengthen this right, which would not arise from the possession being adverse, for, as we have seen, possession under a license is not adverse. The license, being invalid and void, could of course be the foundation of no right in the plaintiff, but its entry and occupation thereunder was, nevertheless, no more adverse to the defendant than if the license had been valid. After the resolution of 1868, the possession may, perhaps, be

regarded as in defiance of the defendant and adverse to it, but not before that time.

There is another more decisive answer to the plaintiff's claim, that it has acquired a right to maintain this encroachment upon the public street by adverse possession.    It seems to be the settled law that the long continuance of such encroachments, although for more than twenty years, cannot destroy the public right or take away the authority of the public officers to remove and abate them.    (*Walker* v. *Caywood*, 31 N. Y., 51; *Kiitany Academy* v. *Brown*, 41 Penn., 270; *Mills* v. *Hall*, 9 Wend., 315; *Milhau* v. *Sharp*, 27 N. Y., 611, 622.)    The defendant's *duties*, as commissioner of highways, differ with regard to the control of the streets from its *rights* as a mere proprietor of property. Those duties are, to some extent, governmental, for the benefit of the public. and the public cannot be barred by their neglect.

These conclusions render unnecessary a consideration of the point upon which the judges differed at General Term.

The judgment must be reversed and new trial granted, costs to abide the event.

All concur, except Church, Ch. J., not voting.

Judgment reversed.