CHARLES W. DOHERTY, *et al.*, Respondents, *v.* GEORGE W. MATSELL, Jr. *et al.*, Appellants.

*Court of Appeals, March 11, 1890.*

Affirming 56 Super. 76.

1. *Adverse possession.    Tax lease.*—Though a person who enters into possession of land under a void lease is not estopped from disputing the title of the real owner, and can, during the term, originate an adverse possession, yet such lease is competent and persuasive evidence that he entered into and held possession of the land under the lease, and that he claimed no other title thereto.

2. *Same.    Presumption.*—Possession of land is always presumed to be in subordination to the true title, and one who claims to have acquired title by adverse possession must show that he and his grantors held the land adversely and in hostility to the true owner claiming the entire title thereto. .

3. *Same.*—Where, but for the lease, the evidence is ample to show an adverse possession, the existence of the lease, whether valid or invalid and the entry thereunder, characterize such possession.

4. *Same.*—The conveyance by quit-claim deed, and the assignment of the lease at the same time, subject to the rents and covenants therein contained, authorize, if they not absolutely require, the inference that all that was intended to be conveyed was the term under the lease.

Appeal from a judgment of the general term of the superior court of the city of New York, affirming a judgment entered upon a decision of the court.

*Emanuel J. Myers*, for appellants.

*Alex. Thain*, for respondenst.

EARL, J.—There is no dispute that the record title to the land in question was in the plaintiffs and the sole reliance

of the defendants is upon a title by adverse possession. The facts upon which they base their claim are as follows: Prior to 1849 the land was vacant, unimproved and unoccupied, and on the 25th day of September, 1848, in pursuance of a sale conducted for that purpose, a tax lease thereof for a term of twenty-five years was, on behalf of the city of New York, executed to George W. Matsell. In that lease it is recited that the owner had neglected to pay the taxes upon the land, and that Matsell was entitled to hold the land "against the owner or owners thereof, and all claiming under him, her or them, until such purchaser's term thereon should be fully complete and ended." It was provided in the lease that Matsell, his executors, administrators and assigns, should be at liberty "to remove all the buildings and materials which he, she or they shall erect or place thereon during said term, within one month after the expiration of the said term, but shall leave the five lots, with the streets fronting the same, in the order required by the regulations of the common council."

In pursuance of that lease Matsell took possession of the land, erected buildings thereon and occupied the same until the 28th day of February, 1857, when he executed a quitclaim deed thereof to Andrew H. Mickle, and at the same time assigned to him the tax lease, subject to the rents and covenants therein contained. Mickle occupied the land and received the rents thereof until some time in 1858, when Matsell again resumed possession of the land without, so far as appears in the case, any reconveyance of the land or any reassignment of the lease to him; and he continued to occupy the land and receive the rents thereof until the 1st day of November, 1864, when he conveyed the same by a quit claim deed to his son, the defendant, George W. Matsell, Jr., who has since occupied and possessed the same. On the 30th day of April, 1883, the persons who owned the land (unless their title had been lost by adverse possession) con-

veyed the same to Charles Jones, for whose benefit, as grantee, this action was brought on the 19th day of October, 1883.

There was no evidence that Mickle or that George W. Matsell, Sr., prior to the 1st day of November, 1864, ever claimed any title to the land, except under the lease, or ever did any act inconsistent with a claim of right under the lease. The court, at the trial term, refused to find that either Matsell, Sr., or Mickle occupied the land under a claim of title adverse to the true owners, or that they occupied claiming the entire title to the land; but on the contrary, it found that the defendants and their grantees did not for twenty years before the commencement of the action hold the land adversely to the plaintiffs or their grantors.

It is undoubtedly true that for irregularities in the imposition of the taxes and in the proceedings leading to the sale, the lease was void. But Matsell entered under the lease, and his right to hold under it does not appear ever to have been disputed. While under such a lease he was not estopped from disputing the title of the real owners, and while during the term he could have originated an adverse possession, yet he did not do so; and the lease although void was competent and persuasive evidence that he entered into and held possession of the land under the lease, and that he claimed no other title thereto. In order to establish title by adverse possession it was incumbent upon the defendants to show that they and their grantors held the land adversely and in hostility to the true owner, claiming the entire title thereto. Hoyt *v.* Dillon, 19 Barb., 644; St. Vincent Orphan Asylum *v.* City of Troy, 76 N. Y. 108; Gross *v.* Welwood, 90 id. 638; Sands *v.* Hughes, 53 Id. 287.

Possession of land is always presumed to be in subordination to the true title, and one who claims that it is in hos-

tility to such title must give evidence showing that fact or from which the fact may properly be inferred.

Here the evidence and circumstances were ample to justify a finding that Matsell, Sr., never, during the time he possessed the land, claimed to own anything more than the estate which the lease purported to give him, and that the land was never possessed adversely and in hostility to the true owners prior to the 1st day of November, 1864. The quit-claim deed to Mickle was an appropriate instrument for the conveyance of Matsell's interest in the term, and the assignment at the same time of the lease, subject to the rents and covenants therein contained, authorizes, if it does not absolutely require, the inference that all that Matsell intended to convey was his term under the lease. The fact that he resumed possession of the premises in 1858, without, so far as appears, any reconveyance to him, certainly is not conclusive evidence that he intended then to assert an absolute title to the land ; but the inference is permissible and most probable that there was either an undisclosed reconveyance to him by Mickle or some arrangment between Mickle and him by which he was to resume his former title. It must be presumed, in the absence of other proof, that he occupied the premises as he did before the conveyance to Mickle, and as Mickle did. He knew the existence of the lease and that he had no right to occupy the premises except by virtue thereof, and there can be no presumption that he intended, without any title or right, to acquire by simple possession the title to this land and thus without a shadow of right deprive the true owners thereof. If the adverse possession of these premises commenced at any time before the expiration of the lease from the city, the evidence authorized a finding that it commenced not earlier than the 1st day of November, 1864, when Matsell conveyed to his son. The defendants admit that at the time of the conveyance of the land to Charles Jones they claimed the adverse possession under that title, and,

therefore, it was proper that this action should be commenced in the name of the grantors for the benefit of their grantee, under § 1501 of the Code.

The case of Sands *v.* Hughes, *supra*, is not an authority for the defendants. That case holds that a lessee under such a lease is not estopped from disputing the title of the supposed owner for whose default in the payment of the taxes the land was sold by the city, and that during the term of such a lease, even if valid, an adverse possession may be originated which will ripen into a title within twenty years after the end of the term ; and that if the lease is invalid an adverse possession may originate and commence to run at any time which will ripen into a title within twenty years from the time it originated. There the adverse possession under claim of title was found. But the difficulty with the case of the defendants here is that there is no evidence requiring a finding that Mickle or George W. Matsell ever originated an adverse possession or claimed an adverse title earlier than the 1st of November, 1864, and the defendants, therefore, failed at the trial, as they must fail here, on the ground that they did not establish the adverse possession upon which they seek to base their title. But for the lease, the evidence was ample to show the adverse possession. But the existence of that, whether valid or invalid, and the entry there under characterizes the possession and must properly dominate this case.

We are, therefore, of opinion that the judgment should be affirmed, with costs.

All concur.