## WALTER *v.* MACFARLAND.

<hr>

MUNICIPAL CORPORATIONS; DISTRICT COMMISSIONERS; STREETS.

1. While the laying out, opening, and improvement of streets in cities are matters of peculiar fitness for municipal regulation and control, yet the powers of municipal governments in relation thereto are such only as are expressly conferred, or may be fairly and reasonably implied from powers expressly granted.

2. The exclusive control of the streets and the power to make regulations for keeping them in repair, conferred upon the municipal authorities by sec. 77, D. C. Rev. Stat., does not imply the power to narrow their width, at discretion, after they have been established and improved and have gone into general public use, even though it may be to the public advantage so to do.

3. Sec. 225 D. C. Rev. Stat., would seem to indicate the general intention of Congress that all roadways in streets in the city of Washington shall be at least 35 feet wide.

4. Although the District commissioners, in occasional instances, may have exercised a power without challenge, yet such power will be denied them, when duly challenged, if not authorized by law.

5. *Semble,* that the power to grade streets is included in the power to repair

them, conferred upon the District commissioners by sec. 77, D. C. Rev. Stat.

No. 1612.   Submitted February 13, 1906.   Decided March 7, 1906.   Motion for rehearing submitted March 22, 1906.   Decided April 6, 1906.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia dismissing their bill for an injunction, and on a motion for a rehearing.

*Decree reversed, and rehearing denied.*

The COURT in the opinion stated the facts as follows:

The appellants, LeRoy D. Walter, Evan H. Tucker, and William J. Frizzell, have appealed from a decree dismissing a bill filed by them as resident taxpayers and owners of lots abutting on the streets hereafter mentioned, against the commissioners of the District, to enjoin them from executing an order, by them made, to narrow the roadway in certain streets of the city of Washington.   It appears from the allegations of the bill, admitted by the answer, that, in execution of their order aforesaid, the defendants are about to make a change in G street, between 4th and 14th streets northeast, which said street is now 90 feet wide between building lines, having parking 15½ feet wide, sidewalks 12 feet wide, and a roadway 35 feet wide.   The proposed change will reduce the roadway to 30 feet by adding 2½ feet to the sidewalk on each side.

Similar changes are about to be made in 7th and 8th streets from Maryland avenue to Florida avenue northeast, which will reduce the present roadway of the former from 32 feet to 30 feet, and that of the latter from 40 feet to 39 feet.

The single question that has been raised is whether the defendants have the power conferred upon them by existing law to make such changes in the established public streets of the city of Washington.

*Mr. Mason N. Richardson* and *Mr. Henry C. Stewart* for the appellants.

*Mr. E. H. Thomas,* Corporation Counsel, and *Mr. F. H. Stephens,* Assistant, for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The commissioners, who have succeeded to the powers formerly conferred upon the board of public works in respect of street control and improvement, rely upon section 77, D. C. Rev. Stat., for their authority to make the proposed changes in the said streets. That section reads as follows: "The board of public works shall have entire control of and make all regulations which they shall deem necessary for keeping in repair the streets, avenues, alleys, and sewers of the city, and all other works which may be intrusted to their charge by the legislative assembly or Congress."

Municipal governments exist and exercise authority through legislative sanction. For convenience of administration they are created as agents of government for certain local purposes, and have such powers only as are expressly conferred or may be fairly and reasonably implied as necessary to carry into effect such as have been expressly granted. *Barnett* v. *Denison,* 145 U. S. 135, 139, 36 L. ed. 652, 653, 12 Sup. Ct. Rep. 819. And while the laying out, opening, and improvement of streets in towns and cities are matters of peculiar fitness for municipal regulation and control, powers relating thereto must be similarly construed. *State* v. *Mobile,* 5 Port. (Ala.) 279, 310, 30 Am. Dec. 564; *St. Vincent Female Orphan Asylum* v. *Troy,* 76 N. Y. 108, 112, 32 Am. Rep. 286; *Lackland* v. *North Missouri R. Co.* 31 Mo. 180, 185; *Atty-Gen. ex rel. Holtz* v. *Heishon,* 18 N. J. Eq. 410; *Heiskell* v. *Baltimore,* 65 Md. 125, 151, 57 Am. Rep. 308, 4 Atl. 116.

The municipal organization of the District of Columbia is of a peculiar character. There is no general organic law covering all of the ordinary powers usually conferred in the creation of municipal corporations throughout the several States of the Union,—no formal municipal charter, so to speak.

The commissioners, though vested from time to time with the power to make important regulations, are ministerial officers. There is no special municipal council or legislative body, as was the case under the preceding form of municipal government. Congress possesses and has retained the powers of a local legislature. Sometimes it enacts special laws relating to local affairs, and sometimes it delegates to the commissioners extensive powers to make rules and regulations respecting specified subjects. The commissioners have no authority to raise revenues for the support of the local government, and those raised by the direct authority of Congress are not turned over to them for appropriation and expenditure at discretion.

The title in fee to all streets and public reservations in the city of Washington is vested in the United States, and the public parks have been specially intrusted to the care and supervision of one of the departments of the general government. Congress has specially provided, from time to time, for the improvement and extension of the old, established streets, as well as for the opening of new streets, and the changing and closing of others. While such works are provided to be done under the general supervision of the commissioners, their discretion in all matters, including expenditures, is limited by the authorizing acts, and the special appropriations for the purpose. The commissioners cannot close streets; they cannot authorize private encroachments, occupations, or obstructions; they are not permitted to authorize the construction of a street-car line in them.

In the light of these facts, and in conformity with the general rule of construction before stated, we are constrained to hold that the commissioners have not the power to narrow the roadway of the streets in question, notwithstanding it may be to the public advantage. The question is not one of expediency, but of power. The exclusive control of the streets, and the power to make regulations for keeping them in repair, conferred by section 77 aforesaid, does not, in our opinion necessarily imply the power to change their width at discretion after they have been established and improved, and have gone into general public use. If the power to narrow the width of the roadway at all,

in a single street, can be implied from the general grant of power to control and repair, then it may be exercised to any extent, in the discretion of the commissioners, short of closing it completely. And if a single street or park thereof can be so narrowed, then all of the streets and avenues of the city may be subjected to the same process at discretion.

The power contended for is great, and far-reaching in its consequences; its exercise is of the greatest importance, not only to all owners of abutting property, but to the general public also; and we cannot believe that Congress contemplated its extension through the general grant of the power to control and repair.

Section 225, D. C. Rev. Stat., has been relied on by the appellants, in support of their contention, as expressly limiting the power of the commissioners to reduce the width of a roadway in a street to less than 35 feet. This section authorized the District authorities "to set apart from time to time, as parks, to be adorned with shade trees, walks, and inclosed with curbstones, not exceeding one half the width of any and all avenues and streets in the said city of Washington, except Pennsylvania, Louisiana, and Indiana avenues, and 4½ street between the city hall and Pennsylvania avenue, leaving a roadway of not less than 35 feet in width in the center of said avenues and streets, or two such roadways on each side of the park in the center of the same; but such inclosures shall not be used for private purposes."

If section 77 were conceded to extend the power contended for on behalf of the appellees, then section 225, considered in connection with it, would probably have the effect to limit the narrowing of roadways in all streets to 35 feet. But this would apply to but two of the streets in question, because the reduction in the third does not bring it within that limit. Believing, however, that section 77 does not confer the power to narrow the streets or roadways at all, section 225 must be regarded as conferring an independent power not elsewhere provided for. Moreover, while section 225 appears later in the order pursued in the revision of the District statutes, it was enacted by Congress nearly a year before that embraced in section 77. For the

reasons before given we regard the meaning of section 225 as of no practical importance in this case, though it seems to indicate the general intention of Congress that all roadways in streets shall be at least 35 feet wide.

It follows that the decree dismissing the bill must be reversed, with costs, and the cause remanded with direction to grant the injunction prayed for.                    *Reversed.*

On March 22, 1906, a motion for a rehearing was made on behalf of the appellees by *Mr. Thomas* and *Mr. Stephens,* who filed a brief in support of the motion.

*Mr. Richardson* and *Mr. Stewart* filed a brief opposing the motion.

On April 3, 1906, the motion for rehearing was denied.

PER CURIAM:

The disastrous results of our decision in this case upon schemes for the improvement of streets, which the representatives of the District of Columbia seem to apprehend, have caused us to make a careful re-examination of the decision in the light of the printed argument submitted with the motion for rehearing.

No specific instances of the narrowing of streets during the thirty-five years that section 77, D. C. Rev. Stat., has been in force have been called to our attention, so as to present the question of the effect of a further construction of that section through frequent and continuous operation of the power on the one hand and acquiescence on the other. If, in occasional instances, the power may have been exercised without challenge, we regard the meaning of the section as too plain for the adoption of such a construction.

No additional legislation has been called to our attention that tends to increase or enlarge the power given by the section heretofore passed upon, nor has any decision been cited which con-

flicts in any respect with the doctrine heretofore enounced. Decisions of the Supreme Court of the United States and of this court, referring to the section, have relation to questions arising in respect of grading streets, encroachments thereon and upon parking, and upon the liability of the District of Columbia for neglect of duty in keeping streets in repair. Not one involved the power herein claimed to widen or narrow a street. In deciding that the section relied on did not confer such power, nothing was said or intended to be intimated as regards the powers of the commissioners, in the reasonable exercise of their discretion, to improve or repair the streets by reducing or raising their grade. Where grading is necessary in order to improve and further a convenient use of the streets, it may be included in the power to repair, but as to that we express no opinion, for the question is not even incidentally involved. Certainly there is nothing in the cases decided that goes to the denial of such power. All that we intended to hold, and that we think is carefully stated in the opinion, is that the commissioners have no express or implied power to narrow an established street. If such power is desirable, application for its extension will have to be made to Congress. The motion is *denied.*

The appellees, the Commissioners of the District of Columbia, applied to the Supreme Court of the United States for the writ of certiorari. Their petition was denied by that court June 6, 1906.