# REPORTS OF CASES ADJUDGED

IN THE · .

# SUPREME COURT OF PORTO RICO.

---

AMERICAN RAILROAD CO. OF PORTO RICO *v.* QUIÑONES.

APPEAL from the District Court of Mayagüez.

No. 317.—Decided January 11, 1909.

RIGHT OF EMINENT DOMAIN—RIGHTS OF THE PARTIES IN INTEREST.—The right of eminent domain is incident to the sovereignty of every government, but this high power in all free countries must be exercised in accordance with law, and with a due regard to the rights of the parties in interest.

PRIVATE PROPERTY CANNOT BE EXPROPRIATED WITHOUT JUST COMPENSATION.— The principle that "private property shall not be taken for public use without just compensation," enunciated in the fifth amendment to the Constitution of the United States, is in force in Porto Rico and is virtually comprised within the provisions of section 365 of the Civil Code.

LIMITATION OF THE EXERCISE OF THE POWER OF EMINENT DOMAIN.—The Civil Code merely limits the exercise of the power of eminent domain by prescribing that the expropriation must be made by competent authority, for a justifiable purpose of public utility, and after proper indemnity and compensation.

RIGHTS OF OWNERS OF LAND AND OF LESSEES.—An owner of land is entitled to the value of same and to any damages caused by the taking thereof; a lessee is entitled to the value of the lease upon the property taken and to any damages suffered by him through the destruction of crops or otherwise, and this indemnity shall be paid before the property can be taken for public use and put in possession of the petitioner.

AMENDMENT OF THE EXPROPRIATION ACT—POWERS OF EXECUTIVE COUNCIL.—The Act of March 12, 1908, amending the Expropriation Act of 1903, does not give to the Executive Council any further power than it already had, it being just as necessary now as before to have recourse to a proceeding in court in cases of expropriation.

EVERY PERSON MUST BE HEARD BEFORE BEING DEPRIVED OF HIS PROPERTY.— Every person must be heard and have his day in court before being deprived of his property.

1

PROCEEDINGS BEFORE EXECUTIVE COUNCIL—CONDEMNATION PROCEEDINGS—DECREE OF COMPETENT COURT.—Proceedings had before the Executive Council in a matter of expropriation, or the mere filing of a petition for expropriation, are not sufficient to entitle the petitioner to enter upon a private property, take possession of same, eject the owner thereof, and commence construction work thereon, but a decree of a competent court expropriating the land and fixing the amount of the compensation and damages to be paid therefor, must first be secured.

OWNERSHIP OF LAND IS EXCLUSIVE—DEPRIVATION OF SAME—DAMAGES TO THE PROPERTY.—Ownership of land is exclusive and does not tolerate a use of the land acquired by another for purposes inconsistent with and opposed to the owner's rignts, and to irreparably damage the property of the owner is to that extent to deprive him of it, and he is protected by the law from any such aggression.

The facts are stated in the opinion.

*Mr. Eduardo Acuña* for appellant.

*Messrs. F. L. Cornwell and Leopoldo Feliu* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is an injunction case, coming from the District Court of Mayagüez. The American Railroad Co. of Porto Rico laid out a line of railway from some point between Hormigueros and San Germán, running in an easterly direction through the lands of José Vicente Quiñones, to a point on the western border of the Estero River, near the town of Sabana Grande. The company commenced preparing the way right and building the track, taking possession of about three-fourths of an acre of defendant's land for that purpose. Expropriation proceedings were also begun in the proper court, but had not been concluded when the company commenced operations. The defendant objected to the taking of his property in this summary manner and drove away the workmen of the company by force of arms. Quiñones' employes were arrested charged with an assault, and it seems that a civil action for damages was also entered against him.

At this stage of events the railroad company filed an application for an injunction against Quiñones, substantially making the following allegations:

That on the 5th of March, 1908, an ordinance was passed by the Executive Council of Porto Rico granting to the Railroad

Co. of Porto Rico and to its assignee, the American Railroad Co. of Porto Rico, the right to construct a branch line from a point on its general line, between the stations of San Germán and Hormigueros, extending towards the east to a point at or near the western border or bank of the Estero River on the eastern part of the town of Sabana Grande, a distance of fourteen kilometers, more or less; said resolution of the Executive Council declaring that such branch is of public utility.

That on the 8th of June, 1908, plaintiff filed a complaint in the District Court of Mayagüez against José Vicente Quiñones, seeking a declaration that this land should be regarded as expropriated in that part to which the complaint makes reference—that is to say, the zone or parcel of land through which said branch is to run—such tract having an area of two thousand eight hundred and forty four square meters or areas, and forty square centimeters or centares in surface, the belt taken extending through the property of the defendant, from a place which is bounded by lands of the Succession of Mayoral Quiñones in the western part of defendant's property; the same being also bounded by lands of Succession Mayoral Quiñones toward the eastern part of defendant's property, and that the plaintiff corporation had deposited in the office of the secretary of the court the sum of $75 as the estimated value, or reasonable price for the said land.

It is also alleged, by the plaintiff, that the company commenced the erection of the branch line mentioned by entering into defendant's property, and carrying on works of construction up to a time when defendant, without any right or reason, prohibited the plaintiff, his agents and servants, from carrying on the necessary and indispensable operations for building such branch line on his property, to which reference was made; and the plaintiff has incurred many and great expenses on account of said works done on the property of defendant, and is under the obligation of terminating such line, and having the same ready for transportation, in the month of December, 1908; and that the building of the branch line referred

to on defendant's property does not cause nor will it cause any grave or considerable damages to the defendant; and that the company was willing to give the bond which might be required, and also to indemnify the defendant against the damages that might be caused if the injunction should be granted; and finally, that should the company be prevented from proceeding with the building of said branch line, then great and irreparable damages will be suffered by said company, and it will be compelled to institute countless and endless suits, to establish its rights in the premises.

The defendant, Quiñones, made an answer in which he admits the passage of the ordinance by the Executive Council, the filing of the suit for expropriation, and that the company had commenced constructing the line of railroad on his land. The defendant then, in effect, denied all the other material allegations of the petition and alleged, as new matter, several facts all tending to show that defendant, utilizing his rights of ownership, prohibited the representative of the company to enter into his property; that he presented against said representative and his employes, a complaint and also a civil action for damages, he also having been denounced for assault and battery, and that the plaintiff corporation had no right to run its line through defendant's property because its complaint for expropriation is not accompanied by any title of acquisition of that parcel which is necessary for the construction of said branch, nor is it accompanied by any document which shows the necessity of using said land, nor has any concession been given by competent authority to enter into said property, in the violent and unlawful manner in which he did enter on the premises of the defendant; that the suit for the expropriation, which serves as a basis for the petition for injunction, was excepted to within the time prescribed for filing the answer; and that plaintiff was notified of said answer; and that the plaintiff has not previouly indemnified defendant for the property sought to be expropriated; and that it is not

shown by the petition that plaintiff has any right to such remedy.

Upon these pleadings on August 3, 1908, the court made an order concluding with the following words:

"The court is of the opinion that it should declare, and does hereby declare the opposition to be dismissed, and therefore the revocation or dissolution of the order, and that the preliminary injunction which has been prayed for should issue; ordering therefore that an order for a preliminary injunction be issued, with the seal of the court, and directed to the defendant José Vicente Quiñones, his agents and servants, to the effect that they be restrained from executing any act tending to obstruct or impede in any manner the American Railroad Co. of Porto Rico, its agents, servants and employes, in the erection of said line and maintenance of the same, and the way rights, bridges, trenches and other works that may be necessary for the building and maintenance of said branch on the property of defendant, which is situate in the ward of Minillas, in the municipal jurisdiction of San Germán, and which is to be crossed by the line that is being erected by the railroad company, between the stations of San Germán and Hormigueros, up to another point near the town of Sabana Grande; said property being described as follows: 'On the north, east and west, bounded by lands of the Mayoral Quiñones Succession; on the south by the Great River;' until the suit for expropiation is finally decided, which is on file in this court under number 1903, and the law permits this, on condition that, within two days after the rendition of this judgment, the American Railroad Co. of Porto Rico, plaintiff herein, increases to $1,000 more the bond which it has given to answer for the damages that said injunction order might cause to the defendant, and let the parties be notified."

From this order, the defendant, José Vicente Quiñones, took an appeal to this Supreme Court; and the case having been argued and duly submitted, now stands before us for decision.

It seems to be the theory of the respondent, which was adopted by the court below, that the railroad company having secured the passage of an ordinance by the Executive Council, declaring the proposed branch line a work of public utility, and having located the line of its way right and insti-

tuted a suit for expropriation of the property required, an l given a bond protecting the owner against all damages that he he might suffer by reason of the said expropriation, that the company had a perfect right to take possession of the land needed in its construction and to eject the owner therefrom, remitting him to his remedy on the bond given by it, in order to secure pay for his land and damages for any wrongs inflicted by the company on the landed proprietor.

The defendant on the contrary asserts that the railroad company has no right to enter upon his land, for purposes of construction, nor to eject him therefrom, until the expropriation proceedings should be concluded, in the manner provided by the law, and a decree properly rendered defining the rights of the parties vesting the title to the land allowed to be taken for a railway, or the right to use the same, in the railroad company, and fixing the amount of the compensation which should be paid by the expropriating company to the landowner and the amount of the damages which he would suffer by the expropriation, and until payment of the same had been made to the landowner therefor, no lawful entry could be made.

We will proceed to a discussion of the questions presented and to a determination of the same under the law as enacted, interpreted and applied in Porto Rico.

The earliest statute law, now in force, which we have on this subject is article 355 of the Civil Code which reads as follows:

"No person shall be deprived of his ownership, except it, be by a competent authority and for a justified purpose of public utility, and after having been properly indemnified.

"If this requirement has not first been complied with, the district courts shall protect and, in proper cases, replace the owner in possession of the expropriated property.

"The indemnification shall comprise not only the value of the thing whereof the owner is deprived, but also a compensation for any damages and injuries which may be caused him by the deprivation of the property."

Then followed the statute of 1903 known as: "An act to provide for the condemnation of private property for the purposes and under the conditions therein named," past and approved on the 12th of March, 1903. (See Session Acts of 1903, p. 50.)

These laws were discussed and interpreted, by this court, in the case of *Saldaña v. The School Board of Carolina,* in a decision rendered on the 22d of April, 1908 (14 P. R. Rep., 339). Had that case been followed it is very probable that this appeal would never have been taken and this decision would have been properly made in the court below. The case referred to substantially declares:

"While the right of eminent domain is incident to the sovereignty of every government, this high power in all free countries must be exercised in accordance with law, and with a due regard to the rights of the owner of the land taken to just compensation."

The principle of natural justice which is announced in the fifth amendment to the Constitution of the United States, that "private property shall not be taken for public use without just compensation" is in force in Porto Rico being virtually set forth in article 355 of our Civil Code. The Civil Code merely limits the exercise of the power of eminent domain, as is done by constitutional provisions in the several States, by prescribing that the expropriation must be made by competent authority for a justified purpose of public utility; and after proper indemnification and compensation.

The rights not only of the owner but of any lessee should be considered by the court rendering a judgment in an expropriation proceeding. The owner is entitled to the value of his land and to any damages caused by the taking thereof; the lessee is entitled to the value of the lease upon the property taken and to any damages suffered by him through the destruction of crops or otherwise, and this indemnity should be paid both to the owner and the lesee, if there be any, before the property can be taken for the public use indicated.

Full and adequate compensation and indemnification must be first made to the owner, and to any other parties having legal rights in the property, for all losses and damages suffered by them, before the land can be taken for a public use. Such is the evident purpose and intention of the law.

Though this decision was made under the expropriation law of 1903, yet the amendments to the said law, made on the 12th of March last, do not affect the principles of law announced in the decision, nor render them less applicable in practice than they were aforetime.

In our opinion the authorities referred to in the Saldaña case support the principles there enunciated, and the law is therein correctly stated and should be followed. The Law of the 12th of March, 1908, amending the expropriation Act of 1903, does not give to the action of the Executive Council, by ordinance or otherwise, any further power than it already had. A proceeding in court is just as necessary now as it was before the passage of the amendatory act. Before a person may be deprived of his property he must have his day in court.

It is not enough that the railroad company has taken the proceedings which are set out in its petition for injunction, to entitle it to take possession of the land belonging to a citizen of Porto Rico, or any other person, and eject him therefrom and construct thereon a roadbed and other works necessary to the operation of a railway; but the company must first secure a decree of a competent court expropriating the land proposed to be taken and fixing the amount of the compensation and damages which should be paid therefor; and further such amounts thus ascertained must be actually paid to the owner of the land before the railroad company sets foot on the premises, for any other purpose than making a preliminary survey. Such is the law in the United States where the rights of property are protected by constitutional enactments, and such is the law in this Island under our existing statutes.

The plea, made by the company and adopted by the court below, that it is for the public benefit that the construction of the railroad should not be obstructed or delayed, and that the rights of the individual should yield to the public benefit, is not sound nor in the least worthy of consideration. We live under a government of law, and the rights of each individual citizen, in his person, his property and his reputation, must be protected from invasion by any other person, under any pretext whatever. If the community demands that the individual shall yield his property to be used for the public good, the law points out the method in which this sacrifice shall be made, and it is the bounden duty of all persons, natural and artificial, railroad companies, men, courts, and the Government itself, *to track the law.*

The district court in the granting of this injunction falls into another serious error. It is said that the railroad company does not seek to deprive the defendant of his title to the land in question nor to interfere with his position as the owner of the land, but only to use the land for the purpose of building a railway thereon. This is a specious argument and altogether unsound. In support of this principle we can do no better than to quote from the luminous opinion rendered by Mr. Justice Miller, in the case of *Pumpelly* v. *Green Bay Company,* a Wisconsin case, in which it is said:

"It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the Government, and which has received the commendation of jurists, statesmen, and commentators as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that if the Government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not *taken* for the public use. Such a construction would pervert the constitutional provision into a

restriction upon the right of the citizen, as those rights stood at the common law, instead of the Government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors.'' (*Pumpelly* v. *Green Bay Company,* (13 Wall.), 80 U. S., 177.)

Ownership of land is exclusive and does not tolerate the use of the land owned by another for purposes inconsistent with and opposed to the owner's rights. To irreparably damage the property of the owner is to that extent to deprive him of it, and he is protected by the law from any such aggression. (*Angell on Water-courses,* par. 465a; *Hooker* v. *New Haven & Northampton Co.,* 14 Conn., 146; *Rowe* v. *Granite Bridge Co.,* 21 Pickering, 344; *Canal Appraisers* v. *The People,* 17 Wendell, 604; *Lackland* v. *North Missouri Railroad Co.,* 31 Mo., 180; *Stevens* v. *Proprietors of Middlesex Canal,* 12 Mass., 466; *Pratt* v. *Brown,* 3 Wis., 613; *Walker* v. *Shepardson,* 4 Id., 511; *Fisher* v. *Horicon Iron Co.,* 10 Id., 353; *Newell* v. *Smith,* 15 Id., 104; *Goodall* v. *City of Milwaukee,* 5 Id., 39; *Weeks* v. *City of Milwaukee,* 10 Id., 242.)

No citizen is required to yield up his land for the public benefit until he has been paid for it the full market value and besides all damages caused to his property adjoining thereto. Cases heretofore cited.

For the reasons stated the order of the District Court of Mayagüez herein quoted should be reversed and the injunction granted should be dismissed at the costs of the respondent.

*Reversed.*

Justices Hernández, Figueras, and Wolf concurred.

Mr. Chief Justice Quiñones did not take part in the decision of this case.